## HEWLETT v. SCHADEL.
### No. 3548.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1934.

Jacob L. Morewitz, of Newport News, Va. (Morewitz & Morewitz and A. L. Bivins, all of Newport News, Va., on the brief), for appellant.

Leon T. Seawell, of Norfolk, Va., for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal by plaintiff in an automobile collision case in which verdict was directed for defendant. Plaintiff, who at the time of her injury was a young girl sixteen years of age, was riding with defendant on his motorcycle as his guest. It was in the nighttime, and defendant was driving the motorcycle down a residential street in the city of Newport News, Va., at a rate of speed estimated by the witnesses of plaintiff to be between 35 and 40 miles per hour, although the limit permitted by the law of Virginia was only 25 miles per hour. Va. Code of 1930, § 2145 (4), subd. (b), par. 3. An automobile coming down the street in the opposite direction turned to the left to go into a service station, and defendant crashed into it with his motorcycle, inflicting upon plaintiff the serious injuries of which she complains. There was evidence justifying the conclusion that, if defendant had been driving at a lawful rate of speed, the collision might have been avoided. The trial judge, while holding that defendant was guilty of negligence, directed a

verdict in his behalf on the ground that he was not shown to have been guilty of gross negligence, and hence was not liable in damages to a guest under the doctrine of recent Virginia decisions. See Young v. Dyer, 170 S. E. 737; Jones v. Massie, 158 Va. 121, 163 S. E. 63; Boggs v. Plybon, 157 Va. 30, 160 S. E. 77.

 The first question which we must decide in considering the appeal is whether the case is one where we are bound by the "guest rule" of the Virginia courts or one in which we apply the general law as laid down by the federal courts in the exercise of their independent judgment. We think it is clearly the latter. No state statute, local rule of property, or question affecting the internal organization of the state is involved. The question as to what constitutes negligence is, in the absence of statute, one of general jurisprudence to be answered by applying the rules of the common law; and, if there is any field of negligence law in which the federal courts ought to exercise an independent judgment in applying these rules, it would seem to be in automobile collision cases, where the parties involved are citizens of different states, and where the rules of the road are applied to highways used by people from every section of the country. Where rules are prescribed by statute for the use of the roads, the federal courts must follow them; but, where there is no statute, they should not hesitate to follow their independent judgment in applying the rules of the common law, and thus unify as far as possible the rules under which the people of the various sections of the country may use the highways which are now so largely devoted to interstate travel and commerce.

That we should apply the general law, and not the local decisions, in cases of this general character, is settled, we think, beyond question. The general rule as to the law to be applied was stated by Mr. Justice Story in Swift v. Tyson, 16 Pet. 1, 18, 10 L. Ed. 865, as follows: "In the ordinary use of language, it will hardly be contended, that the decisions of courts constitute laws. They are, at most, only evidence of what the laws are, and are not, of themselves, laws. They are often reexamined, reversed and qualified by the courts themselves, whenever they are found to be either defective, or ill-founded, or otherwise incorrect. The laws of a state are more usually understood to mean the rules and enactments promulgated by the legislative authority thereof, or long-established local customs having the force of laws. In all the various cases, which have hitherto come before us for

decision, this court have uniformly supposed, that the true interpretation of the 34th section [of the Judiciary Act of 1789 (28 US CA § 725)] limited its application to state laws, strictly local, that is to say, to the positive statutes of the state, and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intra-territorial in their nature and character. It never has been supposed by us, that the section did apply, or was designed to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation, as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves, that is, to ascertain, upon general reasoning and legal analogies, what is the true exposition of the contract or instrument, or what is the just rule furnished by the principles of commercial law to govern the case."

The rule was applied in determining the liability of an owner of property for a nuisance maintained by a contractor in erecting a building thereon, Chicago City v. Robbins, 2 Black, 418, 428, 17 L. Ed. 298; in determining liability of a common carrier under a contract exempting it from responsibility for negligence, New York Cent. Railroad Company v. Lockwood, 17 Wall. 357, 368, 21 L. Ed. 627; in determining the liability of a railroad company to its servant for injuries caused by negligence, Hough v. R. Co., 100 U. S. 213, 226, 25 L. Ed. 612, Wabash Railway Co. v. McDaniels, 107 U. S. 454, 459, 2 S. Ct. 932, 27 L. Ed. 605, Randall v. B. & O. R. Co., 109 U. S. 478, 3 S. Ct. 322, 27 L. Ed. 1003, and Chicago, etc., R. Co. v. Ross, 112 U. S. 377, 5 S. Ct. 184, 28 L. Ed. 787; in determining whether employees of a railroad company were fellow servants, so that one of them was precluded from recovery against the master on account of the negligence of the other, Baltimore & O. R. Co. v. Baugh, 149 U. S. 368, 374, 13 S. Ct. 914, 37 L. Ed. 772, Beutler v. Grand Trunk, etc., R. Co., 224 U. S. 85, 88, 32 S. Ct. 402, 56 L. Ed. 679; and in determining whether a carrier was liable to a passenger for exemplary damages on account of the wanton and oppressive conduct of a servant, Lake Shore, etc., R. Co. v. Prentice, 147 U. S. 101, 106, 13 S. Ct. 261, 37 L. Ed. 97; Norfolk & P. Traction Co. v. Miller (C. C. A. 4th) 174 F. 607, 609. If these decisions are correct, as we must assume that they are,

then certainly the measure of liability of one operating a motor vehicle for negligence resulting in injury to his guest is, in the absence of statute, a matter to be determined by the general law. The Circuit Court of Appeals of the Sixth Circuit has decided a very similar question in holding that, notwithstanding state decisions to the contrary, federal courts will not impute the negligence of the driver of an automobile to a guest or passenger therein. Grand Trunk Western R. Co. v. Collins (C. C. A. 6th) 65 F.(2d) 875; Commercial Electric Supply Co. v. Greschner (C. C. A. 6th) 59 F.(2d) 512; Wabash Ry. Co. v. Walczak (C. C. A. 6th) 49 F.(2d) 763. And in a recent automobile case from Virginia, involving liability to a guest, we have applied the common-law rule as to negligence without adverting to the gross negligence rule of the late Virginia decisions. Weekley v. Thomas (C. C. A. 4th) 63 F.(2d) 988.

There has been in recent years some criticism of the rule of Swift v. Tyson from those who have apparently seen no more in the rule than that it sometimes results in conflicts of decision between state and federal courts, and who have ignored both the underlying principle upon which it is based and the broad public policy which makes it of infinitely greater importance to-day than when announced nearly a century ago. The principle upon which the rule is based is that the common law is the law of the various states, except as changed by statute, and that this is the law to be applied by the federal courts in deciding cases not dependent upon statute or some local rule affecting property or the internal organization of the state. In applying the common law, the federal courts must decide what the law is in the light of the well-settled rule that decisions are mere evidences of the law and not the law itself. Decisions of the local courts are, of course, entitled to great respect as evidences of the law; but, if they have departed from the principles of the common law, it is the duty of the federal courts to follow the law rather than them. One of the principal purposes of the creation of the federal courts was to establish impartial tribunals which would not be subject to local influences; and, if this purpose is to be attained, they must be allowed to exercise an independent judgment on the law as well as on the facts of the cases before them.

And the argument from the standpoint of public policy is equally strong. The United States is no longer a mere confederation of states. It is a great nation. It is essential to the free development of trade and commerce within its borders that the rules of law governing the people in their various relationships be as uniform as possible, so that the citizen who trades, or travels, or makes investments, in states other than that of his residence, may know with substantial certainty what his rights and liabilities in a given situation will be. To hold that the federal courts must follow the state courts whenever they depart from the rules of the common law would tend to destroy the unity and uniformity of the law and would greatly weaken our federal system; for it must be remembered that any external union depends in the last analysis upon internal unity, and that there is no more important unifying influence in our national life than the great legal system which is the common heritage of our people. To hold to the rule of Swift v. Tyson, on the other hand, will preserve a uniform body of law upon which those who do business in other states can depend, and which will inevitably have a unifying influence on the decisions of the state courts themselves.

And the occasional conflict which occurs between the decisions of the state and federal courts is by no means the serious matter that some persons imagine. If the federal court follows the rule of the common law, as it must, its decision is in accord with the system which, as has been said, is the common heritage of the people in all of the states and with which they are presumably familiar. Men are presumed to know the law; and they actually do know pretty well those rules of the common law which affect their lives and business. They are not presumed to know what judges have said about the law; and decisions departing from the common-law rules are known to but few persons outside the class of professional lawyers. Adherence to the rules of the common law is not only essential, therefore, to the doing of justice where citizens of different states are involved, but it also results in decisions more nearly in accord with the ideas and conditions of life of the people whose local courts may have departed temporarily from common-law principles.

In the class of cases where the principles of the common law are being applied to new situations, the application will be more nearly in accord with the spirit of the common law, when made by a system of courts having jurisdiction over a wide territory and subject to the supervisory power of a central tribunal where conflicting opinions may be reconciled and unsound views eliminated, than when made by forty-eight local tribunals which are not subject to review and by which temporary

and local conditions may be given undue weight. If the rule of Swift v. Tyson is adhered to in such cases, the law will have the uniform development so greatly to be desired, and local departures from that development will be but transitory incidents. If it is not followed, local decisions will make anything like a uniform and orderly development of the law a matter of extreme difficulty.

 Coming then to the case before us, we do not think that, under the principles of the common law, the liability for negligence of the operator of a motor vehicle on account of injuries sustained by a guest can be limited to cases of gross negligence. Negligence is the failure to use the ordinary care which a reasonably prudent man would use, considering all the circumstances of the case, in the discharge of a duty owing to another; and, if such care is not used and injury results, liability ought to and does follow, irrespective of any classification either as to the care required or as to the resulting negligence. The attempt thus to divide negligence into degrees has been expressly disapproved by the Supreme Court. In Steamboat New World v. King, 16 How. 469, 474, 14 L. Ed. 1019, the court said:

"The theory that there are three degrees of negligence, described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. In Storer v. Gowen, 18 Me. 177, the Supreme Court of Maine say: 'How much care will, in a given case, relieve a party from the imputation of gross negligence, or what omission will amount to the charge, is necessarily a question of fact, depending on a great variety of circumstances which the law cannot exactly define.' Mr. Justice Story (Bailments, § 11), says: 'Indeed, what is common or ordinary diligence is more a matter of fact than of law.' If the law furnishes no definition of the terms gross negligence, or ordinary negligence, which can be applied in practice, but leaves it to the jury to determine, in each case, what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty, had better be abandoned.

"Recently the judges of several courts have expressed their disapprobation of these attempts to fix the degrees of diligence by legal definitions, and have complained of the impracticability of applying them. Wilson v. Brett, 11 Mees. & W. 113; Wylde v. Pickford, 8 Mees. & W. 443, 461, 462; Hinton v. Dibbin, 2 Q. B. 646, 651. It must be confessed that the difficulty in defining gross negligence, which is apparent in perusing such cases as Tracy et al. v. Wood, 3 Mason, 132 [Fed. Cas. No. 14,130], and Foster v. The Essex Bank, 17 Mass. 479 [9 Am. Dec. 168], would alone be sufficient to justify these complaints. It may be added that some of the ablest commentators on the Roman law, and on the civil code of France, have wholly repudiated this theory of three degrees of diligence, as unfounded in principles of natural justice, useless in practice, and presenting inextricable embarrassments and difficulties. See Toullier's Droit Civil, 6th vol., p. 239, etc.; 11th vol., p. 203, etc.; Makeldey, Man. Du Droit Romain, p. 191, etc."

In Milwaukee & St. P. R. Co. v. Arms, 91 U. S. 489, 494, 23 L. Ed. 374, the action was one to recover damages resulting from a railroad collision. In holding that exemplary damages could not be awarded on account of "gross" negligence, in the absence of willful misconduct or that reckless indifference of the rights of others which is equivalent to a reckless violation of them, the court, after quoting with approval from the opinion in Steamboat New World v. King, said:

"Some of the highest English courts have come to the conclusion that there is no intelligible distinction between ordinary and gross negligence. Redf. on Car., § 376. Lord Cranworth, in Wilson v. Brett (11 M. & W. 113), said that gross negligence is ordinary negligence with a vituperative epithet; and the Exchequer Chamber took the same view of the subject. Beal v. South Devon Railway Co., 3 H. & C. 327. In the Common Pleas, Grill v. General Iron Screw Collier Co. (Law Reps., C. P. 1, 1865–66) was heard on appeal. One of the points raised was the supposed misdirection of the Lord Chief Justice who tried the case, because he had made no distinction between gross and ordinary negligence. Justice Willes, in deciding the point, after stating his agreement with the dictum of Lord Cranworth, said,—'Confusion has arisen from regarding "negligence" as a positive instead of a negative word. It is really

the absence of such care as it was the duty of the defendant to use. "Gross" is a word of description, and not of definition; and it would have been only introducing a source of confusion to use the expression "gross negligence" instead of the equivalent,—a want of due care and skill in navigating the vessel, which was again and again used by the Lord Chief Justice in his summing up.'

" 'Gross negligence' is a relative term. It is doubtless to be understood as meaning a greater want of care than is implied by the term 'ordinary negligence'; but, after all, it means the absence of the care that was necessary under the circumstances. In this sense the collision in controversy was the result of gross negligence, because the employees of the company did not use the care that was required to avoid the accident."

In New York Cent. Railroad Company v. Lockwood, 17 Wall. 357, 383, 21 L. Ed. 627, a case involving liability of a railroad company for injury to a drover traveling on a stock train on a drover's pass, under a contract exempting the railroad company for negligence, the court said: "In the case before us, the law, in the absence of special contract, fixes the degree of care and diligence due from the railroad company to the persons carried on its trains. A failure to exercise such care and diligence is negligence. It needs no epithet properly and legally to describe it. If it is against the policy of the law to allow stipulations which will relieve the company from the exercise of that care and diligence, or which, in other words, will excuse them for negligence in the performance of that duty, then the company remains liable for such negligence. The question whether the company was guilty of negligence in this case, which caused the injury sustained by the plaintiff, was fairly left to the jury. It was unnecessary to tell them whether, in the language of law writers, such negligence would be called gross or ordinary."

In Purple v. Union Pac. R. Co. (C. C. A. 8th) 114 F. 123, 130, 57 L. R. A. 700, the late Judge Sanborn said: "The term 'gross' in this connection is nothing but an epithet. It means no more than the failure to exercise ordinary diligence in the circumstances of the particular case. It distinguishes no legal degree of negligence, and it is not error to refuse to apply it to the negligence for which a defendant may be liable, because its use merely tends to create doubt and to increase confusion." See, also, Western Union Tel. Co. v. Catlett (C. C. A. 4th) 177 F. 71; Ore-gon Co. v. Roe (C. C. A. 9th) 176 F. 715; Kelly v. Malott (C. C. A. 7th) 135 F. 74.

The court below has held, and properly so, that there was evidence that defendant was guilty of negligence in operating his motorcycle in the residential section of a city at a greater rate of speed than allowed by law. The jury might well have found that, if he had been operating it at a reasonable and lawful rate of speed and keeping a proper lookout, the collision resulting in plaintiff's injury would have been avoided. See Kinsey v. Brugh, 157 Va. 407, 161 S. E. 41. We are not at all impressed with the argument that a young man who takes a young woman to ride with him need exercise only slight care for her safety because she is his guest, or that he is to be held liable for injury to her resulting from his negligence only if that negligence has been gross. The true rule, we think, is that one operating a motor vehicle is bound to exercise for the safety of his guest the care which a reasonably prudent man would exercise under the circumstances, and that, if there is evidence tending to show that he has failed to exercise such care, the question of negligence so raised is one for the jury to determine. Ingerick v. Mess (C. C. A. 2d) 63 F.(2d) 233. As stated by a careful annotator, the rule established by the overwhelming weight of authority is that "the owner or operator of an automobile owes the duty to an invited guest to exercise reasonable care in its operation, and not unreasonably to expose him to danger and injury by increasing the hazard of travel." See the following annotations to the American Law Reports and the cases therein cited: 20 A. L. R. 1014; 26 A. L. R. 1425; 40 A. L. R. 1338; 47 A. L. R. 327; 51 A. L. R. 581; 61 A. L. R. 1252; 65 A. L. R. 952. Also 42 C. J. 1055.

That the rule so stated is the true rule of the common law is shown, not only by the fact that it is supported by the overwhelming weight of authority, but also by the fact that seventeen states desiring to change the rule and adopt the gross negligence rule or something similar thereto deemed it necessary to enact a statute for that purpose, and that the courts of only six states have adopted the gross negligence rule by judicial decision. See Best's Insurance News, July 1933, pp. 144, 145. That the rule which we have stated to be the true common-law rule was recognized as such by the Virginia courts prior to the decision in Boggs v. Plybon, supra, appears from the decision in Morris v. Peyton, 148 Va. 812, 139 S. E. 500, 503, where the Su-

preme Court of Appeals quoted with approval the following statement of the rule from Perkins v. Galloway, 194 Ala. 265, 69 So. 875, L. R. A. 1916E, 1190: "The express or implied duty of the car owner and driver to the occupant of the car is to exercise reasonable care in its operation not to unreasonably expose to danger and injury the occupant by increasing the hazard of that method of travel. He must exercise the care and diligence which a man of reasonable prudence, engaged in like business, would exercise for his own protection and the protection of his family and property—a care which must be reasonably commensurate with the nature and hazards attending this particular mode of travel."

And the decisions of West Virginia, which, because that state was formerly a part of Virginia, are strong evidence as to the rules of the common law there recognized, support the rule as we have stated it. Moorefield v. Lewis, 96 W. Va. 112, 123 S. E. 564; Marple v. Haddad, 103 W. Va. 508, 138 S. E. 113, 115, 61 A. L. R. 1248. The reason supporting the rule is well put in Munson v. Rupker (Ind. App.) 148 N. E. 169, in a passage quoted by the West Virginia court in the case last cited as follows: "The hospitality of an owner and driver of an automobile should not be burdened with a responsibility that makes is unreasonably hazardous for him to invite or even permit another to occupy a seat in his automobile. But one who takes another into one of these high-powered swiftly moving machines knows disaster may follow, unless he operates it with the required degree of care. He must know and realize that he has voluntarily taken the life and safety of a human being into his care. * * * The general rule as established by the authorities is that the owner or operator of an automobile owes to an invited guest the duty of exercising reasonable care in its operation and not unreasonably to expose him to danger and injury by increasing the hazard of travel. * * * It will not do to say that the operator of an automobile owes no more duty to a person riding with him as a guest at sufferance, or as a self-invited guest, than a gratuitous bailee owes to a block of wood. The law exacts of one who puts a force in motion that he shall control it with skill and care in proportion to the danger created. This rule applies to a guest at sufferance as well as to a guest by invitation."

We are in thorough accord with this reasoning of the Indiana court, as correctly applying the principles of the common law. One operating a dangerous instrumentality such as a motor vehicle ought, in all conscience, to exercise ordinary care for the safety of one riding with him whether as a paying passenger or as a guest; and the law should require nothing less. The fact that the guest pays nothing for riding with the owner furnishes no reason why the negligence of the latter should be excused. On the contrary, the fact that the guest has intrusted himself to the care of the one operating the vehicle is a sufficient reason why the latter should be charged with the duty of exercising the ordinary care of a reasonably prudent man for his safety. The reasoning of some courts that the gross negligence rule should be adopted because of frauds upon insurance companies perpetrated by means of collusive suits for damages instituted by guests is not persuasive. The fact that the owner or operator of an automobile has indemnity insurance has nothing to do with the question of his liability; and it is almost universally held that this fact may not be shown in evidence. If frauds are perpetrated upon insurance companies as a result of collusive guest suits, the companies can readily guard themselves against this evil by excluding liability to guests from the coverage of their policies. If the states desire to change the rule of the common law applicable in such cases, they can do so by statute; but, until such statutes are enacted, we must enforce the rule of the common law as we understand it.

For the reasons stated, the judgment of the court below will be reversed, and the case remanded for a new trial.

Reversed.