MARY GARSKA, APPELLEE, v. AARON HARRIS ET AL., APPELLANTS.

109 N. W. 2d 529

Filed June 9, 1961. No. 34957.

340

Allan F. Black and E. L. Vogeltanz, for appellants.

Leo F. Clinch, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is an action at law brought by Mary Garska, plaintiff, against Aaron Harris and James Harris, defendants, in the district court for Garfield County. The purpose of the action was to recover damages for personal injuries sustained by the plaintiff and for damages to her automobile which she was driving when a pickup truck driven by James Harris struck the rear of her automobile, the pickup truck being owned by Aaron Harris. The jury returned a verdict finding in favor of the plaintiff and against the defendants, and awarded the plaintiff a verdict in the amount of $4,000. Judgment was entered on the verdict. The defendants each separately moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Both of these motions were overruled. Defendants perfected appeal to this court.

For convenience we will refer to the parties as designated in the district court. Although James Harris is referred to in the record as Jimmy Harris, we will refer to him as James Harris in the opinion.

The plaintiff's petition charged the defendant James Harris with negligence in the following manner: That the said defendant negligently drove a pickup truck so that he could not stop the same within the range of his vision; that he negligently drove the pickup truck at a rate of speed in excess of a reasonable and careful rate of speed under the circumstances then existing; and that he negligently failed to keep a proper lookout as to the traffic preceding him upon the road.

The separate answer of James Harris alleged that the personal injuries to the plaintiff and damage to her automobile, if any, on October 30, 1958, were by virtue of the plaintiff's negligence in operating said automobile.

The separate answer of the defendant Aaron Harris

admitted that he was and still is the owner of a 1957 GMC pickup truck; that at the time of the accident his son James Harris was driving it; that the pickup truck was owned and maintained solely by him, purchased with his money for his personal use and for no other person's use; and that at the time of the accident the defendant James Harris and this defendant did not live together as a family and maintained no home as a family.

The defendants set forth several assignments of error, including Nos. 3, 4, 5, and 11 which are not argued in the defendants' brief.

Under section 25-1919, R. R. S. 1943, and Revised Rules of the Supreme Court, 1960, Rule 8a 2(4), consideration of the cause on appeal is limited to errors assigned and discussed, except that the court may, at its option, note a plain error not assigned. See, Trute v. Skeede, 162 Neb. 266, 75 N. W. 2d 672; Hartman v. Hartmann, 150 Neb. 565, 35 N. W. 2d 482.

The defendants predicate error on misconduct of counsel for the plaintiff in his opening argument to the jury. In addition, defendants predicate error on the proposition that testimony of a doctor called as a witness for the plaintiff was a privileged communication, and consequently the evidence of such doctor was not admissible.

In 8 Wigmore on Evidence (3d Ed.), § 2382, p. 817, it is said: "The consultation with such a person must be had in his *professional character at the time*. A consultation, therefore, for some purpose other than that of ultimate curative or alleviative treatment is not privileged; nor is a communication made at some time when the professional relation is not pending."

It appears that the plaintiff called this doctor as a witness over the objections of the defendants, which objections were overruled. Any privilege existing between the physician and the patient is a privilege of a personal nature and may be waived by the patient.

As to misconduct of counsel, the bill of exceptions

fails to reveal any argument to the jury either at the opening of the plaintiff's case or at its closing.

This court clearly indicated in In re Estate of Inda, 146 Neb. 179, 19 N. W. 2d 37, that statements constituting alleged misconduct of counsel in argument to the jury must be taken by the court reporter at the trial, together with the objections made thereto and the court's ruling thereon.

In Melcher v. Murphy, 149 Neb. 541, 31 N. W. 2d 411, it was held that this court could not determine whether counsel was guilty of misconduct while presenting his argument to the jury where the bill of exceptions did not contain all of the argument objected to.

The two above assignments of error made by the defendants cannot be sustained.

The record discloses that the plaintiff is a housewife, 63 years of age. She did some housework and cleaning for her daughter and was paid what amounted to $8 a week, including milk, cream, and eggs. The plaintiff was involved in an accident which occurred on a county road half a mile south of Highway No. 11, an oiled road, and a mile and a half from her son-in-law's home. She was driving a 1949 Plymouth coupé at the time the accident occurred. Her automobile was in good mechanical condition, having been checked a few days prior to the accident by a member of the Nebraska Safety Patrol.

The plaintiff testified that when she got about a mile and a half north of her son-in-law's home she was driving about 30 miles an hour. She noticed her grandson, Robbie, who was walking toward her. He had a habit of doing this and stopping in front of her car. He was in the middle of the road. She applied her brakes and reduced her speed to about 15 miles an hour. When Robbie got within approximately 100 feet of her car, he started to flag her down. She was in the habit of taking him home from school. However, at this time she had other business which needed attention. She

further testified that she was paying attention to her driving and had her car under complete control so that if Robbie stopped in front of her she could stop the car; that she did not come to a complete stop; and that when Robbie could not flag her down and realized she was not going to stop and pick him up, he stepped more to the center of the road and then back, and the plaintiff's car passed Robbie. There was a black pickup truck going south, on the west side of the road. The plaintiff was going north. About that time something crashed into the back of the plaintiff's car. The impact threw the plaintiff's car over into the ditch on the right side of the road. Her car was proceeding under its own power and headed toward a telephone pole, but missed that and hit a tree. Her car went completely out of control and into the ditch on the other side of the road. The seat was broken off and she was unable to reach the brakes. She just hung onto the steering wheel. She managed to keep the car from being upset, and got it back onto the road. The gas tank was broken and gas was leaking out of it. She tried to open the door on her side of the car, but could not get it open. She did get the door on the opposite side of the car open with her left hand. As she got out of the car, she looked back and saw the pickup truck which had struck her car. She walked back to this pickup truck. Two men got out of the truck and stood by the side of it. She asked one of the men, the defendant James Harris, to please go and get her son-in-law, and told him where he lived. This defendant did so, and brought the son-in-law back.

The plaintiff's grandson testified that he was 13 years of age; that he remembered the accident; and that a Mrs. Sears stopped and offered him a ride. He got into the back of her pickup truck. She was going south on her side of the road. He further testified that his grandmother saw him; that she slowed her car down a little bit, but started off again; that a pickup truck came

from the south and struck the plaintiff's car in the rear and pushed it; and that the pickup truck he was riding in kept on going south. After Robbie returned home, the pickup truck driven by the defendant James Harris came to the house.

The plaintiff's son-in-law testified that James Harris drove into his yard and said he had run into the plaintiff; that the plaintiff stopped her car and parked it in the road; that there was quite a bit of dust at the place where the accident occurred; and that he was requested by the plaintiff to come and get this witness. This witness was driven to the scene of the accident where he saw the sheriff, Nate Smith who was with the defendant James Harris, and the plaintiff. He had some conversation with the plaintiff regarding the accident in the presence of James Harris and the sheriff. The plaintiff said she slowed down a little when she saw Robbie standing behind the Sears pickup truck, and proceeded down the road a little ways and then her car was struck in the rear by the pickup truck driven by James Harris. The sheriff asked James Harris if he had been drinking, and he said he had had a couple of beers. James Harris also said that the plaintiff was driving down the road and stopped. This witness further testified that there was some dust in that vicinity.

The sheriff testified that he was called to the scene of the accident October 30, 1958; and that the accident occurred at a point 2½ miles south and east of Burwell. When he arrived at the scene of the accident he saw the plaintiff, James Harris, the plaintiff's son-in-law, and Nate Smith; that the plaintiff's car was struck in the rear about the center of it; that the plaintiff's car was in its right lane of traffic, which would be the east side of the county road; that it was 474 feet from the point of impact to where the plaintiff's car was sitting when he got there; and that he found no skidmarks at the scene of the accident. This witness further testified that the Harris pickup truck had been moved, but

the plaintiff's car had not been moved; that the motor of plaintiff's car was running, and he shut it off; and that the plaintiff's car left the road, went into a borrow pit on the right side of the road over to the fence, then back onto the highway, crossed over to the shoulder of the road on the left side, and came back onto the road after traveling a little distance. The defendant James Harris told the sheriff that the plaintiff's car had stopped on the road in front of him and he did not see it because of the dust, and that there was a car coming from the opposite direction.

On cross-examination the sheriff testified that the road was a dirt road and very dusty; and that the damage to the Harris pickup truck was minor, mostly on the bumper. On redirect-examination the sheriff testified that the plaintiff's car traveled the distance it did due to the impact, because it would not have been possible for the plaintiff to have her foot on the gas pedal because the front seat of the car was torn loose from the floor and tilted back until the back of the front seat rested on the rear seat of the car, and the plaintiff would have been almost lying down in the car; and that the plaintiff's feet could not have touched the floor.

The plaintiff offered in evidence the depositions of the defendants as admissions against interest of the defendants.

The defendant James Harris testified that he was a single man and worked for himself most of the time; that when he was not working he stayed with his father; and that in October 1958, he had stayed 10 days with his father and left his clothes with his father. Sometimes when he was working he spent weekends with his father who lived in a one-room trailer house furnished with a bed and a davenport. This witness further testified that he worked wherever he could get a job, and stayed where he was working; and that he helped his father when his father needed him. On the day of the accident he was driving a 1957 GMC pickup truck.

He was staying with his father at that time. He left the trailer house about 2:30 p.m. This witness further testified that his father did not renew his driver's license when it expired; that this witness did not do all of the driving for his father; that when he was not there his father would hire someone to drive for him; that he would ask his father for the pickup truck and would ordinarily be granted permission to use it; that on the day of the accident he took the pickup truck without his father's permission and went to see about a job picking corn; and that this was the only time he took the pickup without his father's permission. He further testified that the accident happened shortly after 4 p.m.; that he told the sheriff that he had bumped the plaintiff's car; that he did not have a drink that day; that he was driving 30 miles an hour; that the plaintiff was not going any faster; that he did not notice the boy come out on the highway; that the road was dry and dusty; that the plaintiff came to a complete stop; that he did not have notice of the plaintiff showing up and did not know whether she slowed up or not; that he slowed up the pickup truck half a block behind the plaintiff; and that he was pretty close to the plaintiff when she stopped her car. He further testified that when the plaintiff stopped, the pickup was about 20 feet behind her car. He noticed the plaintiff slowing up when he was about 50 feet behind her car. He started to turn, but was unable to do so as there was another pickup truck coming from the north. He could not see this truck, which was driven by Mrs. Sears, all the way because of the dust. Plaintiff's car was ahead of him, slowing down. He knew Mrs. Sears was approaching from the opposite direction at a pretty fair rate of speed. Because of the dust which obscured the road, he was unable to see the plaintiff or Mrs. Sears, and could not tell exactly what the plaintiff did. This witness further testified at the time his deposition was taken that he had been working at a sale barn at Sargent and staying with his father

who had rented a house in Sargent. He further testified that he first saw Robbie at his father's house.

Aaron Harris was called as a witness in his own behalf by the defendants. He testified that he was a widower and lived at Sargent, Nebraska, and had lived in Taylor, Nebraska, in October 1958, in the main part of town in a house trailer which he owned; that James Harris stayed with him part of the time, and stayed wherever he worked at other times; and that James had been working for other people since he was 21 years of age. He further testified that he had no business together with his son James Harris; that he bought the trailer and paid for it with his own money, also that he bought the pickup truck; that James Harris did not have a car after October 30, 1958; that several people borrowed his pickup truck and used it to haul things; that when he went some place he would hire somebody to take him, but his son James most generally took him; that he did not have a driver's license; and that the trip made on October 30, 1958, by his son James was for James' own benefit, and with which he had nothing to do.

On cross-examination this witness testified that his son James had stayed with him off and on for the last 5 or 10 years; that James kept the clothes he was not using on a job in the trailer, and had his meals with this witness; that they both filled the pickup with gas; that this witness furnished most of the food; and that most of the time he and James went together in the pickup truck.

The defendants contend that the pickup truck driven by James Harris at the time of the accident was not a family-purpose car, citing Piechota v. Rapp, 148 Neb. 442, 27 N. W. 2d 682, wherein it is said: "We have followed the family purpose doctrine. In Linch v. Dobson, 108 Neb. 632, 188 N. W. 227, we held: 'Where the head of a family has purchased or maintains a car for the pleasure of his family, he is, under the so-called

"family purpose" doctrine, held liable for injuries inflicted in the negligent operation of the car while it is being used by members of the family for their own pleasure, on the theory that it is being used for the purpose for which it is kept, and that in operating it the member of the family is acting as the agent or servant of the owner.' "

In Wieck v. Blessin, 165 Neb. 282, 85 N. W. 2d 628, this court held: "Where the car is kept for the use and pleasure of the family, and one member of the family· is using it for his individual pleasure, or for one of the family purposes for which it is kept, it comes strictly within the reason of the rule that, in such use, the member of the family is acting as the agent, in furthering the purposes of the owner, as truly as though other members of the family were in the car with him, and that the owner can be held responsible for damages resulting from the negligent operation of the car while so used." It was said in the preceding case: "We do not think the fact that Harold had become of age is necessarily controlling."

In 5A Blashfield, Cyclopedia of Automobile Law and Practice (Perm. Ed.), § 3113, p. 49, it is said: "* * * it has been held that a son or daughter residing with their parents do not cease to be members of the family merely by reason of the fact that they have arrived at their majority, * * *."

In 7-8 Huddy, Cyclopedia of Automobile Law (9th Ed.), § 125, p. 326, it is said: "The test is not whether the son is adult or minor, but whether he was using the car for a purpose for which the parent provided it, with authority, express or implied." See, also, Marshall v. Taylor, 168 Mo. App. 240, 153 S. W. 527; Linch v. Dobson, 108 Neb. 632, 188 N. W. 227; King v. Smythe, 140 Tenn. 217, 204 S. W. 296, L. R. A. 1918F 293.

In Hubert v. Harpe, 181 Ga. 168, 182 S. E. 167, the court said: "In the present case the father is not relieved from liability merely because the son was an

adult and was self-sustaining. It appears that the father kept and maintained an automobile for the comfort and pleasure of his family, including his wife and minor children, and that as a matter of custom he also permitted this adult son, who resided in the same home with him, to use and drive the automobile for the comfort and pleasure of the son, upon the same footing as the wife and minor children. * * * Then, by what principle of law can the mere matter of age determine the question of liability? The extent to which the automobile might be used for the comfort and pleasure of the family was a question to be settled by the father; and it was also a matter for his own determination as to whether he would include his adult son among the number whose comfort or pleasure he would promote by the use of such vehicle."

Under the facts in the instant case the jury was obligated to determine whether or not the pickup truck driven by the defendant James Harris at the time of the accident was or was not a family-purpose car, and whether or not James Harris, at the time, was a member of his father's family. These issues were properly submitted to the jury.

The next question presented by the defendants is whether or not the trial court, failing to instruct the jury on contributory negligence, committed prejudicial error.

This court has many times held that contributory negligence is an affirmative defense. See Bell v. Crook, 168 Neb. 685, 97 N. W. 2d 352, wherein this court said, quoting with approval from Price v. King, 161 Neb. 123, 72 N. W. 2d 603: " 'Negligence must be proved by direct evidence or by facts from which such negligence can be reasonably inferred. In the absence of such proof, negligence cannot be presumed.' " See, also, Peake v. Omaha Cold Storage Co., 158 Neb. 676, 64 N. W. 2d 470; Bailey v. Spindler, 161 Neb. 563, 74 N. W. 2d 344.

In Schrage v. Miller, 123 Neb. 266, 242 N. W. 649, this court said: "Contributory negligence is an affirmative defense, the burden of proving which is on the party pleading it."

The only witness presented by the defendants was Aaron Harris, who was not a witness to the accident, and whose testimony related to the family-purpose doctrine. The evidence was insufficient to sustain a finding of contributory negligence on the part of the plaintiff. The defendants' assignment of error is without merit.

The defendants next contend that the damages are excessive.

The plaintiff was treated by a doctor who testified that the plaintiff was complaining of pain in her right shoulder, back, and neck, and was very nervous and almost hysterical when he examined her at the hospital after the accident. She was treated by this doctor who X-rayed her and found that she had a severe sprain of her ligaments and bruises of the neck and back which he diagnosed as a cervical strain, or as is commonly termed a "whiplash injury." The plaintiff was placed in traction, given cortisone, and massage. She remained in the hospital 4 days. Traction was used after she left the hospital, and she was required to wear a rib harness. She returned to the doctor's office a number of times afterward, complaining of her neck, back, and right shoulder. The doctor testified that if, after 2 years, the plaintiff was still complaining of pain and injury in that area, he would expect her injury to be more or less permanent; that as a result of the injury, and as pain and tenderness in her back and neck muscles were still giving her trouble, the plaintiff would be nervous from the injury and pain and would require future medical attention and expense; and that the plaintiff had been his patient for a number of years prior to the accident and was in good physical condition and suffered no physical disabilities prior to the accident.

The plaintiff testified that she still has severe pain in

her back, neck, and arm, and is unable to do all her housework; that she has continuously been in pain; that she continued visiting her doctor after her release from the hospital; and that she had been treated and had medicine prescribed for her nerves. There was no evidence on the part of the defendants to contradict the foregoing evidence as to the nature and extent of the plaintiff's injuries.

It was stipulated that the repairs to the plaintiff's car amounted to $325.54, that the hospital charges were $55.05, the doctor bill $17, and drug expense $12.55. The plaintiff's doctor did not have his office records with him at the time he testified, and when questioned by the court as to whether he had any more charges for services rendered since the date of the accident, stated that the plaintiff came in for examinations and checkups for quite awhile after she left the hospital, and that he would have to check his office records for the amount.

"A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186. See, also, Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376.

This assignment of error cannot be sustained.

We find no error in the record prejudicial to the rights of the defendants, therefore the judgment of the trial court should be and is hereby affirmed.

AFFIRMED.