LEONARD J. KREIFELS, ALSO KNOWN AS JIMMY KREIFELS, A MINOR CHILD, BY HIS FATHER AND NEXT FRIEND, LEONARD KREIFELS, AND LEONARD KREIFELS, INDIVIDUALLY, APPELLANTS, V. RANDY D. WURTELE AND DONALD WURTELE, APPELLEES.

293 N. W. 2d 407

Filed June 17, 1980. No. 42788.

Martin A. Cannon of Matthews & Cannon, P.C., and Richard H. Hoch of Hoch & Steinheider, for appellants.

Jeffrey A. Silver, for appellees.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and COLWELL, District Judge.

WHITE, J.

Plaintiff, Jimmy Kreifels, a minor, was injured while riding as a passenger on a motorcycle operated by defendant Randy Wurtele, also a minor, on June 22, 1975. Jimmy was 13 years of age and Randy was 14 years of age on the date of the accident. The motorcycle was owned by the defendant Donald Wurtele, Randy's father.

Leonard J. Kreifels, also known as Jimmy Kreifels, by his father and next friend, Leonard Kreifels, and Leonard Kreifels, individually, brought suit in the District Court for Otoe County, Nebraska, for the injuries sustained in the accident. At the conclusion of the plaintiffs' evidence, the court dismissed their petition. Plaintiffs appeal. We reverse and remand.

Assuming, as we must, the truth of plaintiffs' evidence and giving the plaintiffs the benefit of all inferences arising from the evidence, *Bassinger v. Agnew, ante* p. 1, 290 N.W.2d 793 (1980), the facts are these. On the morning of June 22, 1975, the plaintiff Jimmy Kreifels was helping his father in the shop of the family farm. Five school friends arrived at the

farmstead on four motorcycles. The companions requested the plaintiff Jimmy Kreifels to accompany them to Centennial Lake to determine whether the lake was warm enough for swimming. Jimmy's father gave him permission to accompany the boys and Jimmy mounted the motorcycle of the defendant Randy Wurtele as a passenger. The lake was some 3 to 4 miles from the Kreifels' farm by gravel county roads. The route crossed Highway 128 at an intersection 2 miles west of Paul, Nebraska. The trip to the lake was accomplished without incident and the boys remained about 20 minutes. On the trip to the lake, the motorcycles traveled together. On the return trip, Randy sped ahead of the other cyclists and traveled at a speed of 45 to 50 miles per hour. At the intersection of the county road and Highway 128, the highway was protected by stop signs on each side of the county road. A brush patch interferes with the vision of persons traveling on the county road insofar as their ability to see traffic approaching from the east on the highway. The stop sign was visible for at least ¼ mile by traffic on the county road. A "Stop Ahead" sign is located approximately 100 yards from the intersection. As the motorcycle approached the intersection, Jimmy, who was leaning forward and seated directly behind Randy, yelled to Randy to stop. Randy continued through the stop sign without diminishing his speed and crashed into the passenger side of an automobile traveling west on the highway, operated by Al P. Kreifels, a distant relative of the plaintiffs.

Plaintiffs assign as error: (1) The court erred in failing to find unconstitutional the guest statute, Neb. Rev. Stat. § 39-6,191 (Reissue 1978); (2) The court erred in finding that the plaintiffs had failed in their burden of establishing gross negligence; (3) The court erred in directing a verdict in favor of Donald Wurtele on the ground that the plaintiffs failed to prove the motorcycle was being used as a

family-purpose vehicle; (4) The court erred in finding that Donald Wurtele could not be held liable in the absence of a finding of gross negligence against the driver, Randy Wurtele; and (5) The court erred in failing to submit the plaintiffs' case against Donald Wurtele on the theory of negligent entrustment.

By the first assignment of error, plaintiffs invite us to reconsider our decision in *Botsch v. Reisdorff,* 193 Neb. 165, 226 N.W.2d 121 (1975), upholding the constitutionality of the guest statute. As less than a constitutional majority of this court is willing to reconsider that decision, a discussion of the arguments made by the plaintiffs would be fruitless. We adhere to our previous ruling.

We next consider whether there was evidence of gross negligence. The defendants would have us characterize the negligence of the defendant Randy Wurtele as momentary and, therefore, not gross. See, *Branch v. Wilkinson,* 198 Neb. 649, 256 N.W.2d 307 (1977); *Callen v. Knopp,* 180 Neb. 421, 143 N.W.2d 266 (1966).

The evidence discloses that the stop sign was visible; the vision of traffic approaching from the east was impaired; a warning was given at a time sufficient for the defendant to stop at the stop sign; and the driver disregarded the warning. There was sufficient evidence to submit the issue of gross negligence to the jury. *Robinson v. Hammes,* 173 Neb. 692, 114 N.W.2d 730 (1962). An oral warning and a disregard of the warning, when sufficient time exists to avoid the danger, sufficiently distinguishes the facts in this case from the momentary inattention cases and makes them inapplicable. The assignment is meritorious and requires reversal.

The next assignment of error relates to the family-purpose doctrine. In their petition and amended petition, the plaintiffs alleged:

The defendant Donald Wurtele is and was at all times relevant hereto, the owner of a 1974

Yamaha motorcycle. . . . Randy D. Wurtele was the minor son of Donald Wurtele. . . . Donald Wurtele was the head of the household and maintained said motorcycle for the general use, pleasure, convenience, necessity and purpose of said family.

The defendants, by answer and amended answer to the petition, admitted paragraph 2. (There does not appear to be an answer to the amended petition.)

The following direct examination of Randy Wurtele was part of plaintiffs' case:

Q. And in general did your father give you permission to operate the 125cc on the roads around your farm?

A. No.

Q. You used it with his knowledge?

A. Yes.

Q. On the roads around your farm?

A. If he let me — if he said I could, yes.

Q. And he did from time to time do that I take it?

A. Once in awhile.

In spite of the pleadings and this testimony, the trial court concluded that the defendant Randy Wurtele was not shown to have operated the motorcycle with the express or implied permission of his father. We disagree. In *Garska v. Harris,* 172 Neb. 339, 109 N.W.2d 529 (1961), an adult residing with his father was involved in an accident while operating the father's pickup. Although the vehicle had, on numerous occasions, been operated by the son in transporting his father, on the date in question "he took the pickup truck without his father's permission," *Id.* at 347, 109 N.W.2d at 534, although he normally requested permission to drive the pickup. The father testified "that the trip made on October 30, 1958, by his son James was for James' own benefit, and with which he had nothing to do." *Id.* at 348, 109 N.W.2d at 534. The court, quoting from *Linch v.*

*Dobson,* 108 Neb. 632, 188 N.W. 227 (1922), held at 348-49, 109 N.W.2d at 534-35:

> Where the head of a family has purchased or maintains a car for the pleasure of his family, he is, under the so-called "family purpose" doctrine, held liable for injuries inflicted in the negligent operation of the car while it is being used by members of the family for their own pleasure, on the theory that it is being used for the purpose for which it is kept, and that in operating it the member of the family is acting as the agent or servant of the owner.

Under the facts of that case, the question of family purpose was for a jury.

In the instant case, there is at least an inference of approval since Randy testified that he used the motorcycle "If he [his father] let me — if he said I could, yes." The inference of implied approval of use of a family vehicle arises necessarily when prior use of the vehicle is established and certainly when there is no proof or inference of express disapproval. The assignment is meritorious.

By the fourth assignment of error, plaintiffs invite us to reconsider our recent decision in *Wagner v. Mines,* 203 Neb. 143, 277 N.W.2d 672 (1979). We are not persuaded, given the continued constitutional viability of the guest statute, § 39-6,191, that the rationale of that decision is faulty. The assignment is without merit.

As the case must be retried, there is no necessity to pass on the plaintiffs' last assignment of error except to note that, since this is a guest case, in order to prove negligent entrustment against the defendant father, the acts of the entrusted driver must be shown to be grossly negligent.

The case is reversed and remanded for new trial.

REVERSED AND REMANDED FOR
NEW TRIAL.

KRIVOSHA, C. J., concurring in part, and in part dissenting.

I wholeheartedly concur with the majority's opinion insofar as it goes. I wish, however, to make comment with regard to the appellants' first assignment of error, to wit, that the guest statute, Neb. Rev. Stat. § 39-6,191 (Reissue 1978), is unconstitutional. While the majority has correctly noted that there are, as yet, insufficient votes on this court to reconsider our decision in *Botsch v. Reisdorff,* 193 Neb. 165, 226 N.W.2d 121 (1975), I would not wish to leave the impression that that holding is so firmly supported that it should not continue to be considered. I, for one, would join with the as yet less than constitutional majority who would reconsider our decision in the *Botsch* case and would hold that our guest statute is unconstitutional on the basis of the 14th Amendment to the United States Constitution. It seems clear to me that our guest statute does, indeed, deny to certain persons within our jurisdiction equal protection of the laws.

The history of the guest statute makes it clear that its enactment was intended to accomplish two specific purposes: (1) The protection of host drivers from suits by those to whom the host had extended a courtesy, and (2) The elimination of collusive lawsuits. While those concerns may have been real in the 1930's when guest statutes were adopted by various state legislatures (though I would disagree), the advent of automobile insurance has eliminated the necessity to protect those interests in that manner.

Guest statutes have, in recent years, come under attack from a number of areas, including no lesser an authority than the distinguished Professor Prosser. See, W. Prosser, Law of Torts 186 (4th ed. 1971); 35 ATLA L. J. 46 (1974); Morris, *Gross Negligence in Michigan—How Gross Is It?* 16 Wayne L. Rev. 457 (1970); Lascher, *Hard Laws Make Bad*

*Cases—Lots of Them (The California Guest Statute)*, 9 Santa Clara Law. 1 (1968); Gibson, *Guest Passenger Discrimination*, 6 Alberta L. Rev. 211 (1968); Note, *The Case Against the Guest Statute*, 7 Wm. & Mary L. Rev. 321 (1966); Weinstein, *Should We Kill the Guest Passenger Act?* 33 Det. Law. 185 (1965); Allen, *Why Do Courts Coddle Automobile Indemnity Companies?* 61 Am. L. Rev. 77 (1927); *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966); *Stevens v. Stevens*, 355 Mich. 363, 94 N.W.2d 858 (1959); *Hewlett v. Schadel*, 68 F.2d 502 (4th Cir. 1934). As a result of such questioning and reexamination, no fewer than 10 states have, in recent years, held their guest statutes unconstitutional. See, *Ramey v. Ramey*, ____ S.C. ____, 258 S.E.2d 883 (1979), *cert. denied*, 100 S. Ct. 1028 (1980); *Nehring v. Russell*, 582 P.2d 67 (Wyo. 1978); *Manistee Bank v. McGowan*, 394 Mich. 655, 232 N.W.2d 636 (1975); *Primes v. Tyler*, 43 Ohio St. 2d 195, 331 N.E.2d 723 (1975); *Laakonen v. District Court*, 91 Nev. 506, 538 P.2d 574 (1975); *McGeehan v. Bunch*, 88 N.M. 308, 540 P.2d 238 (1975); *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974); *Henry v. Bauder*, 213 Kan. 751, 518 P.2d 362 (1974); *Johnson v. Hassett*, 217 N.W.2d 771 (N.D. 1974); *Brown v. Merlo*, 8 Cal. 3d 855, 506 P.2d 212, 106 Cal. Rptr. 388 (1973).

It is difficult, if not impossible, to understand how one can rationally argue that, if a host driver has two passengers in his car, one of whom is his neighbor on the left who normally contributes $3 a week toward the gas, and one of whom is his neighbor on the right who only occasionally rides with him and, therefore, makes no payment, the neighbor on the left may sue for injuries arising out of ordinary negligence while the neighbor on the right may only recover for gross negligence. That irrational distinction is further blurred when one recognizes that all of these artificial barriers can be eliminated if one simply remembers to hand the driver a dollar before getting

into the car. Neither the alleged protection of the host driver nor the avoidance of allegedly collusive suits can justify the distinction made in upholding the constitutionality of guest statutes.

These are the very same arguments which, for years, were advanced to support the validity of a number of restrictions on the right of recovery by an injured party, including interspousal immunity. This court, however, had little difficulty rejecting these arguments in the case of interspousal immunity. See *Imig v. March,* 203 Neb. 537, 279 N.W.2d 382 (1979).

While courts should be reluctant to overturn acts of the Legislature, where the requirements of the Constitution are violated, we must exercise our duty. As we said in *Imig, supra* at 543, 279 N.W.2d at 386: "The dozen or so state supreme courts that have recently abrogated the immunity doctrine have recognized that an unjust and irrational principle cannot be allowed to persist on the hollow ground that changing an antiquated rule is a job for the legislature." This is particularly true when the antiquated restriction violates one's constitutional right to the equal protection of the law guaranteed under the 14th Amendment.

As noted in *Brown v. Merlo, supra,* "[T]he wholesale elimination of all guests' causes of action for negligence does not treat similarly situated persons equally, but instead improperly discriminates against guests on the basis of a factor which bears no significant relation to actual collision." *Id.* at 860, 506 P.2d at 215, 106 Cal. Rptr. at 391. Little purpose would be served at this time in making a detailed analysis of why the Nebraska guest statute is unconstitutional and I shall, therefore, reserve that for another day. For now, I would simply say that I would join with those other states which have recognized the unfairness of guest statutes and declare it invalid.

I am authorized to state that Judges McCown and White join in this dissent.