JAMES MOST, APPELLEE, v. CEDAR COUNTY, APPELLANT.

FILED FEBRUARY 8, 1934. No. 28783.

*Clarence E. Haley,* for appellant.

*Carlos W. Goltz* and *Alfred Pizey, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and CHASE and ELDRED, District Judges.

ROSE, J.

This is an action to recover damages in the sum of $17,600, for alleged negligence resulting in personal injuries. James Most, a minor 19 years of age, by his father, his next friend, Forrest Most, is plaintiff. Cedar county is defendant. In the daytime, July 8, 1932, while plaintiff, on a motor-cycle, was traveling westward a short distance east of Belden on a county highway, he collided with a county road maintainer that was going eastward and was severely injured. The negligence imputed to Cedar county is that its maintainer, without warning by horn, flag or other means, came up a hill to the top on the wrong, left-hand or north side of the road, as plaintiff, without negligence, approached the top of the hill from the east on the same side of the road, where he could not see the maintainer in time to prevent a collision. Defendant denied the negligence charged by plaintiff and pleaded that his injuries were caused by his own negligence. Upon a trial of the issues the jury rendered a verdict in favor of plaintiff for $1,500. From a judgment therefor. defendant appealed.

It is argued by defendant that plaintiff did not prove his case, that the uncontradicted evidence shows his in-

juries were caused by his own negligence, and that the district court erred in failing to direct a nonsuit. It is the duty of a county to keep county roads in repair and for that purpose necessary road machinery or suitable equipment may be used, even in the face of traffic on the left-hand side of the road. The road machinery with which plaintiff collided consisted of a tractor in front and a maintainer in the rear, each operated by a different employee of the county. On the maintainer a steel blade attached to a diagonal moldboard 16 feet and 3 inches in length extended into the improved roadway from the left-hand or north side about 12 feet and between 3 and 4 feet beyond the tractor. There was a flag 45 inches above the ground on the outer end of the blade. There is no evidence that this equipment was unsuitable for the purpose of repairing roads or that the county was negligent in using it or that it was negligently operated. The evidence does show, however, that there was no horn on the tractor, but the absence of a horn, if required by law, did not prove actionable negligence of defendant, for the reason that plaintiff's own testimony shows that if the operator of the tractor, whose attention was directed to his work, had sounded a horn at the instant plaintiff came into view, the accident could not thus have been prevented. Evidence that it was necessary to operate the maintainer on the left-hand side of the road in the face of traffic is uncontradicted. In broad daylight the road equipment evidenced itself in operation on the highway. At the time of the accident the tractor, moving no faster than five miles an hour, was ascending the hill from the west near the top, from which the road sloped down steep grades both east and west. The road there was in a proper condition for travel. The testimony of plaintiff shows that, traveling west, he came to the top of the hill at the speed of 30 miles an hour and that after he first saw the tractor he was going so fast that he did not have time to stop or turn far enough aside in order to prevent a collision. His testimony shows further that

he turned sharply to his left, applied the brakes and released the clutch. It was shown by uncontradicted evidence that his motor-cycle struck the moldboard or blade at the south end and flew through the air 45 feet and with plaintiff came to rest at a bank on the south side of the road. There was ample room for plaintiff to pass the maintainer on the south side at a safe pace. Two automobiles, going west, safely passed it where it stood shortly after the accident. The maintainer was in operation where the county had a right to use it. It would have occupied the same space in the road had it been going west instead of east. Plaintiff did not prove actionable negligence. The district court erred in failing to direct a verdict in favor of defendant on that ground.

A nonsuit should also have been directed on the ground that the negligence of plaintiff was the proximate cause of the accident and of his resulting injuries. On a 500-pound motor-cycle that could be driven at a speed of 90 miles an hour, plaintiff ascended the steep hill at a speed of at least 30 miles an hour, where he could not see the road immediately ahead beyond the top of the hill. He had no right to presume that, beyond his vision, the road on his right-hand or north side would be free from obstructions on the west side of the hill. It would have been safer for him to assume that danger lurked at the unseen place, if approached at a high speed, and to slacken his pace until he could safely pass objects in his path or stop without colliding with them. A motorist on an unpaved country road knows that it needs constant attention and repairs; that men with road machines and materials may be lawfully at work any where, occupying all or part of the main roadway in ravines or behind hills; that animals from farms may stray into the highways; that trucks and automobiles, without negligence of drivers, may be standing on either side of the highway when there has not yet been time for warnings of danger; that men, women and children have a right to use the highways everywhere. Highway privileges of motorists

require respect for the equal rights of others in the use of public roads.

It is a firmly established general principle, with exceptions not applicable to the present case, that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway at such a rate of speed that it cannot be stopped or turned aside in time to avoid an obstruction discernible within the range of his vision ahead. The cases stating and applying this rule are collected in notes in 44 A. L. R. 1403; 58 A. L. R. 1493; 87 A. L. R. 900. The rule applies to driving in the daytime where vision is shortened by storms or other physical conditions. For the reasons given, the judgment is reversed and the action dismissed.

REVERSED AND DISMISSED.