OMAHA NATIONAL BANK, EXECUTOR OF THE ESTATE OF
LEWIS E. NICHOLS, DECEASED, APPELLANT, V. OMAHA PUBLIC
POWER DISTRICT, A CORPORATION, ET AL., APPELLEES.

180 N. W. 2d 229

Filed October 9, 1970.   No. 37470.

Gaines, Spittler, Neely, Otis & Moore, for appellant.

Fraser, Stryker, Marshall & Veach, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH,
SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for damages for the death of plaintiff's decedent, Lewis E. Nichols, who was electrocuted on the farm of his employer. The action is brought by plaintiff as executor of decedent's estate against Omaha Public Power District, the owner of an electrical distribution line supplying electrical power to the farm. At the close of plaintiff's evidence OPPD moved to dismiss the petition. This motion was sustained.

Decedent was the farm director for Roberts Dairy Co., which owned and operated a dairy farm ½ mile south of Elkhorn, Nebraska. He was electrocuted on June 15, 1967, while moving an aluminum ladder which came in contact with the OPPD power line. The line consisted of three wires, two phase wires carrying 7,600 volts to the ground, and one neutral wire. It was strung between two power poles 320 feet apart, and had been in the same location for several years.

Roberts' employees, under the direction of the farm manager, decedent's brother-in-law, were constructing hay sheds underneath and in close proximity to the power lines. One of them had been constructed 1 foot below and 1 foot east of the west wire of the power line without incident. The second hay shed, the one involved herein, was 60 feet south and 15 feet west of the previous one. It was being constructed approximately 7 feet 4 inches east of the west wire of the power line. The work was being done by Roberts' employees when they were not busy with their regular duties.

Decedent and the farm manager visited about the proximity of the power lines to the new construction, and decedent called the power company requesting that the lines be relocated because they interfered with the construction and use of the hay sheds. In response to the call, two of OPPD's employees came on the farm 1 week before the fatal accident, recommended that the lines be moved, and tentatively staked out the relocation for them. They were then to prepare a diagram

and a material estimate as a step in the procedure of processing the work through the OPPD construction office. Before the lines were moved, the fatal accident occurred.

The shed involved in the accident was to be 136 feet long and 16 feet wide. The support for its sides consisted of used power poles 35 feet long, spaced 15 feet apart and standing approximately 22 feet high. These poles were strung together at the top, with 2 by 8 rafters which were to form a support for an aluminum roof. At the time of the accident, the farm manager, decedent's son, and one other person were working on the construction. They were on a scaffolding erected on a truck, which truck was moved between the poles as the roof construction proceeded. It had been moved to a new location between the two rows of poles by the decedent immediately preceding the accident. After the truck and scaffolding was in place, decedent was heard to remark, " 'I'll move the ladder for you guys before I leave.' "

The ladder was a 22 foot extension ladder and was being used between the power line and the west line of poles. It had been leaning against one of the shed poles, and decedent was to move it to the next pole 15 feet away. While in the process of doing so, he was electrocuted. No one saw exactly what happened. The three persons working on the construction heard a shout or yell after the contact of the ladder and the wire; saw the ladder falling; saw sparks around decedent's feet; and saw the decedent either falling or on the ground. Decedent was unconscious when they reached him, and never regained consciousness.

It is the contention of the plaintiff that OPPD was negligent in not exercising reasonable engineering safety in the maintenance of the power line after the construction was called to their attention. Plaintiff attempted to prove that after the representative of OPPD saw the situation, OPPD was obligated to take steps to protect

the Roberts' employees by insulating the line or raising it by jacking up the poles involved or by disconnecting the electrical current.

This case must be considered under the rule that a party against whom a motion to dismiss is made is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be drawn from the evidence, and if there is any evidence which will sustain a finding for the plaintiff, it may not be disregarded and the case decided as a matter of law. Reed v. Reed, 182 Neb. 136, 153 N. W. 2d 356.

Power companies engaged in the transmission of electricity are charged with the duty of exercising a very high degree of care to safeguard those whose lawful activities expose them to the risk of inadvertent contact with the electric lines but they are not insurers and not liable for damages in the absence of negligence. Gillotte v. Omaha Public Power Dist., 185 Neb. 296, 176 N. W. 2d 24.

One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. Disney v. Butler County Rural P. P. Dist., 183 Neb. 420, 160 N. W. 2d 757.

"To constitute want of due care it is not required that a person should have anticipated the exact risk which occurred, or that the peril was a deadly one; it is sufficient that he has placed himself in a position of a known danger where there was no need for him to be or that he knew or should have known that substantial injury was likely to result from his act." Disney v. Butler County Rural P. P. Dist., supra.

As we view the evidence, there is no merit to plaintiff's contentions. The plaintiff's expert conceded that the OPPD power line exceeded the minimum requirement of the National Electric Safety Code. There was no

appreciable sag; there was only a slight breeze on the day in question; and the line at its lowest point was 22 feet 3 inches from the ground, which is 7 feet 3 inches above the minimum vertical height requirement of the code. We cannot ignore the fact that the power line was not built in proximity to the hay sheds, but rather the sheds were built alongside the power line. Both the decedent and the farm manager realized the danger, and the decedent called OPPD about relocating the line. We realize that a week elapsed between the appearance of OPPD representatives on the premises and the accident, but also appreciate, with a weekend intervening, under the facts of this case this delay was not sufficient to charge OPPD with negligence. Decedent was cognizant of the danger or he would not have requested the relocation of the line. Still, he permitted construction before its relocation. Actually, the north hay shed had been entirely constructed within 1 foot, both vertical and horizontal, of the power line. The shed in question was 7 feet 4 inches from the power line. On this record, if there were negligence on the part of OPPD, which we do not need to decide, the contributory negligence of the decedent barred recovery as a matter of law.

Plaintiff argues that before decedent can be found guilty of such contributory negligence to bar recovery as a matter of law, it is necessary to rebut the presumption that he was using due care at the time of his death. Where there is no witness to an accident causing death, the presumption is, in the absence of evidence to the contrary, that decedent exercised due care; but this presumption is rebutted when circumstances show that decedent was negligent. The presumption of due care arising out of the natural instinct of self-preservation is not evidence but a mere rule of law and obtains only in the absence of direct or circumstantial evidence one way or the other on the subject. When such evidence is produced, the presumption disappears and may no longer

be considered. Anderson v. Nincehelser, 153 Neb. 329, 44 N. W. 2d 518.

For the reasons given, we find that the motion to dismiss was properly sustained, and the judgment is affirmed.

AFFIRMED.