THELMA LISTON, APPELLANT, v. REGINALD M. BRADSHAW III, APPELLEE.

275 N. W. 2d 59

Filed February 6, 1979. No. 41682.

Dennis T. Chapman, for appellant.

Joseph K. Meusey of Fraser, Stryker, Veach, Vaughn, Meusey, Olson & Boyer, P.C., for appellee.

Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and RIST, District Judge.

BRODKEY, J.

This case involves an action filed by Thelma Liston to recover damages for personal injuries sustained by her while riding as a guest passenger in an automobile driven by the defendant, Reginald M. Bradshaw III. Plaintiff brought her action against the defendant under the Nebraska guest statute, section 39-6,191, R. R. S. 1943, and her amended petition alleges gross negligence on the part of the defend-

ant. At the conclusion of the plaintiff's evidence at the trial of the matter, defendant moved for a dismissal of the amended petition, and the trial court sustained the motion to dismiss on the ground that the plaintiff had failed to sustain her burden of proof to establish gross negligence on the part of the defendant. Plaintiff has appealed that order to this court, and the issue on appeal is whether the plaintiff presented sufficient evidence to present a jury question as to the gross negligence of the defendant under the Nebraska guest statute.

In the instant case, the plaintiff claims that the defendant was negligent in three particulars, to wit: (1) That he drove his automobile into the intersection against a red light; (2) that he drove his automobile at that time at an unlawful and unreasonable rate of speed; and (3) that he failed to maintain a proper lookout. Plaintiff contends that, considered together, these three alleged acts of negligence on the part of the defendant constituted gross negligence and justified the submission of the case to the jury and the failure of the trial court to do so constituted reversible error. In resolving the question before us it will be helpful to summarize the evidence adduced by the plaintiff in her case-in-chief, prior to the dismissal of the action by the court. Plaintiff's evidence consisted of her own testimony and also the testimony of one other witness, Alfred C. Ludwig, Jr. Also introduced in evidence on her behalf were certain admissions against interest taken from the deposition of the defendant, Reginald M. Bradshaw III.

Most of the factual background before the occurrence of the accident itself is not in dispute and will be summarized at the outset in order to afford a better understanding of what transpired. The accident in question occurred in the early morning hours of July 7, 1973, at the intersection of St. Mary's Avenue and 28th Street in Omaha, Nebraska. As previ-

ously stated, plaintiff was riding as a guest passenger in defendant's automobile at that time. The accident occurred in the intersection involving the Bradshaw automobile which was traveling north, and an automobile driven by one Albert Brown, which was traveling in a westerly direction. The record establishes that the intersection at 28th Street and St. Mary's Avenue is controlled by traffic lights and that St. Mary's is a one-way westbound street, four lanes in width. The record also establishes that the speed limit on 28th Street at the time of the collision was 25 miles per hour. Earlier in the evening, both plaintiff and defendant had been at the Walking Cane Tavern and both had been drinking, although there is no claim or evidence in the record that either of the parties was intoxicated. The defendant, plaintiff, her sister, and her niece had left the tavern and were going to defendant's home for breakfast. It was arranged that plaintiff would ride with the defendant and the other parties would follow in another automobile. The defendant drove his car from a lot near the tavern, proceeded eastbound on Leavenworth, and then turned north at the intersection of Leavenworth and 28th Streets. He continued in this direction until the accident occurred.

Plaintiff's first witness was one Alfred C. Ludwig, Jr., who was an eyewitness to the accident. He was going west on St. Mary's Avenue at the time and observed the traffic lights at the intersection of 28th Street and St. Mary's Avenue when he was near the intersection; he estimated about one-quarter of a block away. The Brown automobile was in the lane to his right and about two car lengths ahead of him. Ludwig testified that as he approached the intersection the lights were green, and as they came to the intersection, the Bradshaw car darted in front of him from the south and hit the Brown automobile. On cross-examination, Ludwig testified there was a Catholic school and church on the southeast corner

of the intersection. He was asked if the view to the left was completely blocked, and he replied: "I don't know if it is completely blocked, but it's obstructed. I think there is a wall there or something." Ludwig testified he did not see the car coming from the south until it was actually in the intersection and collided with the Brown vehicle. Ludwig was not asked and did not testify relative to the speed of the Bradshaw automobile nor as to the manner in which it was being driven.

The plaintiff, Thelma Liston, then testified in her own behalf. She testified that as they drove north on 28th Street, approaching St. Mary's Avenue, she observed the car coming from the east, and "I just glanced out the window and I knew at the rate of speed he was coming he was going to hit our car." She stated at that time she warned Bradshaw the car wasn't going to stop, looked across at him, and noticed he was looking straight ahead. They were hit by the Brown car immediately thereafter. She testified she did not know the speed at which Bradshaw was traveling as he approached the intersection, but stated he did not slow down. On cross-examination, she testified she was a licensed driver and had been driving for many years. There was nothing about Bradshaw's driving when they left the tavern that caused her any concern. She stated: "He seemed to be driving all right to me, but I was watching for my sister." She did not notice anything about the speed at which Bradshaw was driving that caused her any concern. She admitted she did not see the car Mr. Brown was driving until Bradshaw and she were actually in the intersection. She was questioned at some length about the color of the traffic lights when Bradshaw drove into the intersection, and testified: "I honestly do not know what the -- color the lights were. I saw a yellow light. I don't know whether it was a stop light or what it was, whether it was some other yellow light.

I don't know whether it was just before impact or right after, but I did see a yellow light." She was then asked: "You never saw a red light at all, did you?" and she replied "No, I didn't." It should also be noted that the record reveals that prior to the filing of the action against defendant Bradshaw, plaintiff had filed an action against Brown; and in her petition in that action, had alleged that Brown had entered the intersection against the red light.

Other than the testimony of the two witnesses, as summarized above, the other evidence adduced for the plaintiff were admissions from defendant's deposition which, so far as they pertain to the question of liability, were as follows: " 'How fast would you say your car was going through this period of time approaching the intersection?' Answer: 'Twenty-five to thirty.' Question: 'Did you slow down as you approached the intersection?' Answer: 'No.' Question: 'Did you make any observations as to the cars to your right on St. Mary's Avenue as you approached the intersection?' Answer: 'There was a car stopped in the far right-hand lane over -- or north curb line.' * * * 'Do you remember what kind of car hit you?' Answer: 'At the time I didn't know. I know what kind of car it is now.' Question: 'Did you see that car at all prior to the impact?' Answer: 'If I did it was just before it hit me.' "
The above is, we believe, a fair summary of all the testimony adduced by the plaintiff at the trial in support of her claim that the defendant was guilty of gross negligence. It appears the matter is in dispute as to whether the defendant or Brown had the green light when they drove into the intersection. Even resolving this factual dispute in favor of the plaintiff herein, we have held in Sacco v. Gau, 188 Neb. 808, 199 N. W. 2d 605 (1972), that a violation of a stoplight, standing alone, is not sufficient to prove gross negligence. Plaintiff contends, however, that in addition to the stoplight violation, there is also

evidence of excess speed on the part of the defendant, and of failure to keep a proper lookout. With respect to speed, it is true the speed limit in effect on 28th Street was 25 miles per hour, and defendant admitted he was traveling at a rate of from 25 to 30 miles per hour. There is no evidence to the contrary. We believe a possible violation of the speed limit of 5 miles per hour in the early morning hours, with no showing of heavy traffic on either street, would not, alone, amount to gross negligence, although possibly it might be considered evidence of ordinary negligence. With respect to plaintiff's claim that defendant failed to keep a proper lookout, her sole testimony in this regard is that after they had entered the intersection, she had looked at the defendant and noticed he was looking straight ahead. There is no evidence in the record as to what observations he made to the right prior to entering the intersection, as to whether his view to the right was obstructed by the church and school at the southeast corner of the intersection, nor as to the extent to which the view was obstructed, if any.

What we have here, it seems, are three alleged items of negligence, each of which might well be considered ordinary negligence, but which clearly, considered individually, would not amount to gross negligence. Plaintiff correctly points out, however, that several acts of negligence may, in combination, amount to gross negligence within the meaning of the automobile guest statute. Olson v. Shellington, 167 Neb. 564, 94 N. W. 2d 20 (1959). The question is whether the evidence in the record supporting the claimed acts of negligence of the defendant is of sufficient magnitude to constitute gross negligence under our guest statute. The problem involved was well analyzed and discussed in an opinion by Johnsen, J., in Thompson v. Edler, 138 Neb. 179, 292 N. W. 236 (1940). In that case, Judge Johnsen stated: "It must be borne in mind, always, that no decision

on gross negligence can constitute an absolute precedent in any other case. Each case necessarily differs somewhat in its particular facts and circumstances, and in the composite which results from them. A dissection of the individual facts may, therefore, be misleading, because, in the attempted segregation, part of their real significance may become lost. While it may be regrettable that no perfect yardstick for measuring gross negligence has ever been devised, the numerous decisions, which the guest statutes have produced, seem rather clearly to demonstrate that this is as close as it is possible to come to a judicial solution. If the tapeline of past decisions seems at times to be somewhat inaccurately applied, and the processes of logic to be a bit variable in their result, this may be largely because the observer is looking at the facts in isolation and not in context. Here, both the bench and the profession must be on guard. *Courts cannot hesitate in directing a verdict where the conviction is clear that negligence in a very high degree is not present. But, if there is adequate proof of negligence, a verdict should only be directed where the court can clearly say that it fails to approach the level of negligence in a very high degree under the circumstances. In all other cases, it must be left to the jury to determine whether it amounts to gross negligence or to mere ordinary negligence.*" (Emphasis supplied.) In sustaining defendant's motion to dismiss, the trial court stated as follows: "Well, I have, during the one recess, glanced at two cases which indicate to me the proposition that has been advanced by the defendant here, that momentary negligence at an intersection does not constitute gross negligence, even though there is more than one act of negligence upon which evidence has been adduced. Taking it as a whole, it must rise to the proposition that it is something more than slight. I can cite you Sandrock v. Taylor, 185 Nebraska 106,

and Pavlicek v. Cacak, 155 Nebraska 454. Both of those cases involve collisions in which the evidence indicated separate violations, that is violations of law more than just one act in which the Court indicated that in most situations they did not rise to that degree of negligence which would require submitting the issue to a Jury." He then concluded that the evidence in the instant case did not amount to gross negligence, and therefore sustained the defendant's motion for dismissal.

In Botsch v. Reisdorff, 193 Neb. 165, 226 N. W. 2d 121 (1975), we stated: "In the determination of whether all the evidence in a specific case is sufficient to submit the issue of gross negligence to the jury we have consistently held that the presence of imminence of danger visible to, known by, or made known to a driver, together with a persistence in negligence heedless of the consequences, are factors to be given material, if not controlling, consideration. Zoimen v. Landsman, 192 Neb. 561, 223 N. W. 2d 49 (1974); Thorpe v. Zwonechek, 177 Neb. 504, 129 N. W. 2d 483, (1964); Gummere v. Mudd, 139 Neb. 370, 297 N. W. 622 (1941)." We agree with the trial judge that the negligence in this case was, at the most, momentary negligence, and that in this case there was no "persistence in negligence heedless of the consequences." While there may have been individual acts of negligence on the part of the defendant under the evidence in this case, we agree with the trial court that even conjunctively they did not amount to "gross negligence" within the meaning of the automobile guest statute, which has been defined as great and excessive negligence, or negligence in a very high degree, and indicates the absence of even slight care in the performance of a duty. See NJI No. 7.51.

The trial court was correct in affirming defendant's motion to dismiss plaintiff's petition, and its action must be affirmed.

AFFIRMED.