ALLEN BEEBE, SPECIAL ADMINISTRATOR OF THE ESTATE OF LINDA BEEBE, APPELLANT, V. SORENSEN SAND AND GRAVEL COMPANY, CITY OF OMAHA, AND JOSEPH McGUIRE, APPELLEES.

308 N.W.2d 829

Filed July 31, 1981.   No. 43307.

Mary Cannon Veed of Matthews & Cannon, P.C., for appellant.

Patrick B. Donahue of Cassem, Tierney, Adams, Gotch & Douglas for appellee Sorensen.

Herbert M. Fitle, Omaha City Attorney, and Robert J. Hamer for appellee City.

Wayne J. Mark of Fraser, Stryker, Veach, Vaughn, Muesey, Olson & Boyer, P.C., for appellee McGuire.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Allen Beebe, special administrator of the estate of Linda Beebe, the plaintiff and appellant herein, appeals to this court on behalf of his daughter, Dana Beebe, a minor, from an order entered by the District Court of Douglas County, Nebraska, sustaining the separate motions made at the end of the plaintiff's case by the defendants, Sorensen Sand and Gravel Company (Sorensen), the City of Omaha, and Joseph McGuire, to

dismiss plaintiff's petition against them, or in the alternative to direct a verdict against the plaintiff. On February 6, 1980, the trial judge sustained the defendants' motions and dismissed the petition of the plaintiff against each of them, and thereafter dismissed the jury, which, to that point, had been hearing the case. We reverse and remand for a new trial as to all the defendants except the City of Omaha, and we sustain the action of the trial court in dismissing the City of Omaha, which ruling in favor of the City is not contested by the appellant in this appeal. See *Lynde v. Wurtz*, 147 Neb. 454, 23 N.W.2d 703 (1946).

It appears from the record in this case that on January 15, 1975, at approximately 1 a.m., the decedent, Linda Beebe, was riding as a passenger in an automobile operated by the defendant Joseph McGuire. During the previous evening, January 14, 1975, the couple had dined at a restaurant in Omaha, and later stopped at a lounge where they met some friends and had drinks. At the time of the accident they were proceeding in a southerly direction on the Radial Highway in the vicinity of Seward Street on the way to Linda's home.

It appears from the record that some days prior to the accident in question, Omaha had received a heavy snowfall, and the streets in question were still covered with snow in spots. Defendant McGuire testified at the trial that the Radial Highway was "icy," and also "sloppy" and "wet." McGuire was driving his automobile in the southbound curb lane; and when in the vicinity of Seward, he collided with a snowplow or grader owned and operated by the defendant Sorensen under a contract with the City of Omaha to remove the snow from the streets. At the time of the accident, the snowplow, being described as "Cat 12," was traveling in a northerly direction on the Radial Highway in the southbound curb lane of traffic, the same lane in which McGuire's vehicle was traveling in a southerly direction.

McGuire testified that the collision had affected his memory of what actually happened, and that he had little

recollection of the details of the accident until after the collision occurred. He did remember, however, and testified that he had stopped for a red light before proceeding along the Radial Highway, and definitely stated that he did not see the snowplow at all prior to the accident. Evidence in the record clearly establishes that his automobile struck the grader head on in the southbound curb lane of traffic. McGuire also testified that prior to the accident he was traveling at a speed of approximately 25 m.p.h., and also that he did not recall seeing any flashing lights or other warning signs prior to the accident. His windshield was clean and there was no frost upon it. Although there is no direct evidence in the record that Linda died as the proximate result of the accident, or, for that matter, that she was even dead, the fact remains that her death can hardly be disputed, especially in view of the fact that this action was brought by her special administrator. With reference to the cause of her death, we set out, verbatim, McGuire's testimony as to what happened at that time, and we set out the questions and answers in that interrogation on direct examination: "Q. After you got out of the car did you speak to any of the other people at the scene? A. The first ones that I have — Again, really concrete that I can say that I talked to were the officers, police officers that first arrived and I indicated to them that Linda was in the car; that she was hurt worse than I and they left to deal with her, and other than that I don't really remember speaking to anyone. Q. What had become of Linda? A. She was sitting in the car, head back. As I recall, there was some blood on her forehead, apparently unconscious. Q. Were you then taken to a hospital or — A. Yes. It was, again, right after the blizzard and they were using the big, I believe it's the National Guard's ambulances, things that — two piece units with great big tires and I recall the officers, you know, telling me to get in. Then she was brought on in on the stretcher and the officer had me sit on one seat and brace this stretcher with my feet to keep it from bouncing around in the back of the trailer-

type thing they were using. Yes, we were taken to the hospital at that time. Q. What hospital was that? A. University. Q. Were you injured in this accident? A. Yes. Q. What were your injuries? A. Two or three deep lacerations up here (indicating), and apparently my jaw hit the steering wheel, broke the jaw, broke the bone completely off."

In addition, the evidence also reveals that the windshield of McGuire's automobile was severely cracked and damaged in front of both the driver's seat and the passenger's seat. Linda was taken to the hospital in an ambulance, but the record does not reveal when she died. It is, of course, the general rule in an action to recover for wrongful death that the plaintiff establish by a preponderance of the evidence that the wrongful act or omission of the defendant was the proximate cause of the death. However, it is the general rule that such connection may be shown by circumstantial evidence. See, 25A C.J.S. *Death* § 87 (1966); 22 Am. Jur. 2d *Death* § 222 (1965). Also, the law does not require every fact and circumstance going to make up a case of negligence, or to identify the proximate cause of the injury and death, to be proved by eyewitnesses or positive, direct testimony. 22 Am. Jur. 2d *Death* § 243 (1965). There is sufficient evidence in the record from which a jury could find that the cause of Linda's death was the accident in question.

The snowplow in question was operated at the time of the accident by the witness Stanley Olsen, an employee of the defendant Sorensen. The snowplow in question was 24 feet long, 11 feet high, and 8 feet wide, with a 12-foot blade. It was painted yellow and had, according to pictures received in evidence of the actual plow itself, at least 4 headlights or spotlights upon it, plus a revolving or flashing light on the top of the cab. The type and location of the lights in question were somewhat disputed in the record. However, the evidence establishes that at or near the scene of the accident there were street lights on the Radial Highway, as well as lights from a nearby shopping center. Olsen testified that on that morning he

was operating the snowplow for the City, and that a city inspector was in charge of the snow-cleaning operation and directed the drivers as to which streets should be plowed. Olsen stated that the city inspector told him that he had missed plowing Decatur Street, which was several blocks north of Hamilton Street where he was located at the time he first turned onto the Radial Highway and drove north in the southbound curb lane. Olsen testified that he first observed the car driven by McGuire when it was approximately 200 yards north of him, and that it was coming directly toward his snowplow; that the lights of the car were on; and that the car did not appear to slow down, swerve, or move out of the lane of traffic in which they both were. He testified that at the time of the accident he was going approximately 3 miles per hour. Olsen also testified that the city inspector had told him that he could drive in the southbound lane of traffic in a northerly direction in order to get to the street that he had failed to clean. There is a conflict in the testimony as to whether Olsen had stopped his snowplow prior to the accident. At one point in his testimony he testified that he had stopped, but at another point he testified that he could not recall if he had stopped before the accident.

Larry Erickson, the inspector for the City of Omaha, testified that it was his responsibility to supervise the private contractors who did road work for the City of Omaha. He stated, however, that it was not his function to tell the operators of the snowplows what route they should take. He saw the snowplow shortly before the accident, and testified that it was still moving at that time. He denied in his testimony that he had instructed Olsen to drive northbound in the southbound traffic lane on his way to Decatur Street.

The matter was set for trial by jury in the District Court on February 4, 1980, upon the amended petition of the plaintiff alleging gross negligence under the guest statute against the defendant McGuire, and also alleging various acts of ordinary negligence against the other

defendants. The City of Omaha filed an answer to the amended petition of the plaintiff, and also filed amended cross-claims against the defendants Sorensen and McGuire. The defendant Sorensen filed an amended answer to the amended petition of the plaintiff, and also a cross-claim against McGuire. In the answer filed by the City of Omaha, it alleged that the proximate cause of the collision and injuries to Linda Beebe was the negligence of the defendant Joseph McGuire in failing to keep a proper lookout, in failing to have his vehicle under reasonable control, in failing to yield the right-of-way, in driving his automobile at an excessive rate of speed under the conditions then and there existing, in failing to observe another vehicle clearly within his range of vision, and in driving while under the influence of intoxicating alcohol. In the answer filed by Sorensen, it was alleged that the sole and proximate cause of the accident and decedent's injuries was the negligence of Joseph McGuire in failing to keep a proper lookout, in failing to have his vehicle under reasonable control, in operating his vehicle at an excessive rate of speed under the conditions then and there existing, and in operating his vehicle while under the influence of alcohol. However, in the answer of defendant Joseph McGuire, he alleges that the direct and proximate result of the accident and injuries was the negligence of Stanley Olsen, as imputed to defendant Sorensen, alleging failure to have his vehicle under reasonable control, in failing to yield the right-of-way, in failing to swerve or divert his course of travel so as to avoid the accident, and in failing to have his vehicle equipped with sufficient warning devices as specifically set out in subsequent paragraphs of the answer.

As previously stated, at the close of plaintiff's case, each defendant made a motion for dismissal of plaintiff's petition, or in the alternative for a directed verdict, which motions the trial court thereafter sustained and dismissed the petition against all the defendants.

On appeal, the appellant assigns as error: (1) The trial

court erred in ruling in favor of defendant Sorensen on its motion for a directed verdict on the issue of proximate cause; (2) The trial court erred in finding that no jury question was presented by plaintiff's evidence as to the causal connection between Sorensen's negligence and the plaintiff's injury; (3) The trial court erred in holding that defendant McGuire was not guilty of gross negligence; (4) The trial court erred in holding there was insufficient evidence to create a jury question as to defendant McGuire's negligence; (5) The guest statute is unconstitutional; and (6) The trial court erred in finding that no damages accrued to Dana Beebe as a result of her mother's death.

At this point it will be helpful to review some well-established principles of law applicable to situations such as those present in the instant case: "[A] party against whom a motion to dismiss is made is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be drawn from the evidence, and if there is any evidence which will sustain a finding for the plaintiff, it may not be disregarded and the case decided as a matter of law." *Omaha Nat. Bank v. Omaha P. P. Dist.*, 186 Neb. 6, 9, 180 N.W.2d 229, 232 (1970); *Reed v. Reed*, 182 Neb. 136, 153 N.W.2d 356 (1967). "For the purpose of evaluating a motion for a directed verdict or a dismissal of a cause of action, all doubt must be resolved in favor of the party against whom the verdict or dismissal is urged. The truth of all evidence he has submitted must be assumed and he must be given the benefit of all inferences therefrom. The question must be whether, in view of these assumptions, the jury could properly bring in a verdict in his favor." *Jones v. Foutch*, 203 Neb. 246, 252, 278 N.W.2d 572, 576 (1979). See, also, *Bohling v. Farm Bureau Ins. Co.*, 191 Neb. 141, 214 N.W.2d 381 (1974). In *Jones v. Foutch, supra* at 254, 278 N.W.2d at 577, the court also quoted from *Demont v. Mattson*, 188 Neb. 277, 196 N.W.2d 190 (1972), as follows: " 'This court has frequently reiterated in slightly varying language that whether

gross negligence exists must be ascertained from the facts and circumstances of each particular case and not from any fixed definition or rule. [Citation omitted.] In case of doubt or where reasonable minds might differ the evidence must be resolved in favor of the existence of gross negligence, in which case it is a question for the jury.'"

The above case also cited from our opinion in *Carley v. Meinke*, 181 Neb. 648, 652, 150 N.W.2d 256, 259-60 (1967), in which case the trial court directed a verdict for the defendant and on appeal this court reversed and remanded for a new trial, stating: "It is also true that any one of the foregoing acts of negligence might not, standing alone, constitute gross negligence. . . . 'It is apparent that no one act of the defendant can be separated from the whole of these acts and held to be the independent cause of this accident. Under these circumstances, each act is not to be segregated and weighed separately to determine whether or not it constituted gross negligence. The several acts are to be considered as a whole. While each of several acts, standing alone, may not exceed the bounds of ordinary negligence, yet, taken together, they may establish gross negligence.'"

In *Komma v. Kreifels*, 144 Neb. 745, 750, 14 N.W.2d 591, 595 (1944), this court stated: "'What amounts to gross negligence in any given case must depend upon the facts and circumstances. What would amount to gross negligence under certain circumstances might, under different circumstances, be even slight negligence. Ordinarily, the question of negligence, whether slight or gross, is one of fact. If the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine.'" The rule is also well established that no decision on gross negligence can constitute an absolute precedent in any other case. Each case necessarily differs somewhat in its particular facts and circumstances, and in the composite which results from them. *Liston v. Bradshaw*, 202 Neb. 272, 275

N.W.2d 59 (1979). In the foregoing case, quoting from *Thompson v. Edler*, 138 Neb. 179, 292 N.W. 236 (1940), we also stated at 279, 275 N.W.2d at 63: "'While it may be regrettable that no perfect yardstick for measuring gross negligence has ever been devised, the numerous decisions, which the guest statutes have produced, seem rather clearly to demonstrate that this is as close as it is possible to come to a judicial solution. If the tapeline of past decisions seems at times to be somewhat inaccurately applied, and the processes of logic to be a bit variable in their result, this may be largely because the observer is looking at the facts in isolation and not in context.'" Likewise, in *Olson v. Shellington*, 167 Neb. 564, 571, 94 N.W.2d 20, 25 (1959), we stated: "An issue of gross negligence must be decided from the facts of each case. Such an issue is for the jury if the evidence relating thereto is conflicting and from it reasonable minds might arrive at conflicting conclusions."

We first consider the question of whether the trial court should have dismissed plaintiff's petition against defendant McGuire pursuant to his motion at the end of plaintiff's case. In so doing, the court determined that the evidence against McGuire was insufficient to constitute gross negligence. We believe the trial court erred in this regard, and that there was sufficient evidence in the record to warrant the submission of the question to a jury. Under the rules of law set out above, we believe there is ample evidence in the record to allow reasonable minds to conclude that McGuire was guilty of gross negligence, particularly if the evidence is viewed in the light most favorable to plaintiff's claim against him. We think there is clearly a question as to the sufficiency of McGuire's lookout and observations in view of the size and dimensions of the snowplow in question, which was, according to the evidence, equipped with both stationary and flashing lights, and was painted a yellow color. This is particularly true in view of the fact that the driver of the snowplow had no trouble at all seeing McGuire's approaching automobile when it was approximately 200

yards from where he was stationed. McGuire also testified that his windshield was clean and there was no frost covering it. He merely testified that he did not see the snowplow at all before the collision occurred.

A similar situation was involved in *Boepple v. Mohalt*, 101 Mont. 417, 54 P.2d 857 (1936), where the Supreme Court of that state held that the sole and proximate cause of a collision between an automobile and a road grader was the automobile driver's failure to maintain a proper lookout, and not the alleged failure of the operator of the grader to operate it on the right side of the road or his failure to use adequate warning signs, and that the injured occupant of the automobile was precluded from recovering damages against the operator of the grader. In that case the court stated at 433, 54 P.2d at 861: "The physical facts, as shown by the photographs, together with the evidence, contradict the claims of plaintiff and disclose that there was unquestionably ample room for Boepple to have passed around the grader. This circumstance, together with Boepple's own statement that his eyesight was good, and the evidence showing conclusively that he could have easily stopped or avoided the grader if he had seen it at a distance of 239 feet, lead to the inevitable conclusion that the sole, direct and proximate cause of the accident was Boepple's failure to keep a proper lookout ahead."

We next consider whether there was evidence of unlawful speed to submit to the jury, in addition to the other evidence of negligence, in order to determine whether the individual acts of negligence amounted to gross negligence. While McGuire testified that he was traveling at a speed of approximately 25 m.p.h. prior to the accident, we believe it was properly a matter for the jury to determine from all the facts and circumstances whether that speed, under the conditions then existing, was unreasonable, considering the fact that the highway was snowpacked and icy; that the accident occurred at 1 a.m. in the morning; that there were street lights and other lights in the vicinity; that, as previously stated, the

snowplow was equipped with flashing and stationary lights; and also the evidence that the operator of the snowplow was able to see McGuire over 200 yards away. There would seem to be at least a fact question presented as to whether McGuire could have or should have seen the snowplow approaching him on the wrong side of the road, and whether or not under the circumstances McGuire should not have reduced his speed to accommodate for the surrounding conditions.

Finally, we believe that the jury should have had the additional opportunity to consider the fact that McGuire had been imbibing in intoxicating liquors earlier that evening. While there is no evidence in the record that McGuire was actually intoxicated or that his drinking of beer and wine earlier in the evening affected his driving ability, yet, under our recent case of *Fortin v. Hike*, 205 Neb. 344, 287 N.W.2d 681 (1980), we think it is clear that the jury was entitled to *consider* the fact that McGuire drank the liquor, along with the other evidence in the case. In *Fortin* we pointed out three situations involving the consumption of alcoholic liquor, the first being a situation where there is evidence of consumption of liquor by the operator of a motor vehicle, but an absence of evidence from which the trier of fact might conclude that the drinking affected the safe operation of the vehicle, and no other evidence of any other negligent act. In that situation we laid down the rule that the consumption of alcohol as a negligent act should not be submitted. The second type of situation, pointed out in that opinion, which we believe is applicable to the facts of the instant case, is that: "(2) There is evidence of consumption of alcoholic liquors, accompanied by other evidence of a negligent act or acts which may have proximately caused the accident." *Id.* at 349, 287 N.W.2d at 684-85. In that situation we held at 349-50, 287 N.W.2d at 685: "In the second situation, the consumption of alcohol alone is not evidence of negligence, but may be considered by the trier of fact together with evidence of the other acts

or omissions from which negligence may be inferred. . . .

"Where the evidence is conflicting, of course, the determination of the issue is one for the trier of fact."

The evidence in the record with respect to the lack of lookout on the part of McGuire and the visibility of the snowplow in front of him, as well as the question presented as to the possible excessiveness of his speed under the circumstances, in addition the evidence of his prior consumption of alcoholic liquor, we believe would clearly justify, and in fact require, the submission of the issue of "gross negligence" to the jury before whom the trial was already proceeding.

We now consider whether there is evidence in the record to justify the submission of negligence on the part of Sorensen, or his driver Olsen, to the jury. Admittedly there is a conflict in the evidence in the record as to whether Olsen was directed to drive in a northerly direction in the southbound curb lane to reach Decatur Street, which his supervisor had informed him he had neglected to plow. Olsen stated that he was so directed. His supervisor testified that Olsen was not so directed. In view of the conflicting testimony on this important question of whether he was negligent in driving the snowplow in the wrong direction on the Radial Highway, it was for the jury to determine the issue. It must also be remembered that Olsen testified he first saw the McGuire vehicle coming toward him when he was over 200 yards distant, and that the vehicle came straight at him and did not in any manner attempt to swerve or drive onto the adjacent lane to pass him. There was no evidence that Olsen made any effort whatsoever to avoid the collision.

Sorensen seeks shelter and justification for its actions under the provisions of Neb. Rev. Stat. § 39-606 (Reissue 1978), which provides exceptions to the application of the traffic rules of this state as set out in the statutes. Section 39-606 provides in part: "Unless specifically made applicable, the provisions of sections 39-601 to 39-6,122, except those provisions relative to careless

driving and to reckless driving, shall not apply to: (1) *Persons, teams of draft animals, motor vehicles, and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work . . . ."* (Emphasis supplied.)

The evidence is clear, notwithstanding the argument by Sorensen to the contrary, that Olsen was changing the location of the operation of the snowplow to a different location than that at which he had previously been working, at the express direction of his supervisor. Sorensen argues that Olsen was still actually engaged in work upon the surface of the highway while so doing. This same issue was presented in the case of *Gonsalves v. Petaluma Bldg. Materials Co.*, 181 Cal. App. 2d 320, 5 Cal. Rptr. 332 (1960), in which case the court held that even though a water truck was merely making a loop to resume work on southbound lanes of a divided highway, the water truck ceased to be "actually engaged in work upon the surface of the road" and commenced "traveling to such work" when it entered a crossover to northbound lanes, and it was not exempted, while in crossovers in northbound lanes, from traffic rules. The court held that the exemptions from traffic rules afforded by statute should not exceed the purpose for which it was enacted, to wit, the release of vehicles "actually engaged" in construction work from traffic laws designed for regulation for normal highway traffic. Likewise, in *Doerle v. State*, 147 So. 2d 776 (La. App. 1962), the Louisiana court held that where a highway crew had completed work on the surface of the highway and was making necessary preparations to move to some other location, a state employee attempting to make a sharp left turn upon the highway was not exempt from traffic regulations under the statute providing that the regulatory provisions do not apply to persons or vehicles actually engaged in work upon the surface of the highway. In *Creamer v. Rude*, 37 Ill. App. 2d 148, 155-56, 185 N.E.2d 345, 348 (1962), the court stated: "We now

turn to defendant's 2d point. A statute of this state provides that the provisions of the Motor Vehicle Act shall not apply to persons operating motor vehicles and other equipment while such persons and/or equipment are actually engaged in work upon the surface of the highway. . . .

"Whether or not a State highway employee is 'actually engaged in work upon the surface of the highway' at the time of an alleged occurrence, so as to come under the provisions of this statute may, or may not, according to the circumstances, *be a question of fact*." (Emphasis supplied.) See, also, *Cose v. Towner County*, 102 N.W.2d 538 (N.D. 1959); 60A C.J.S *Motor Vehicles* § 371 (1969).

Sorensen relies on the case of *Most v. Cedar County*, 126 Neb. 54, 252 N.W. 465 (1934), as authority for his contention that it was proper for Olsen to operate road maintenance equipment on the left-hand side of the road in the face of traffic, when necessary. We believe *Most* is factually dissimilar to the instant case, as in *Most* the tractor was actually being used for road repair at the time of the collision. The court stated in its opinion at 56-57, 252 N.W. at 466: "Evidence that it was necessary to operate the maintainer on the left-hand side of the road in the face of traffic is uncontradicted. . . . The maintainer was in operation where the county had a right to use it." Under the facts in the instant case, and the authorities above cited, we believe that a fact question existed as to whether at the time of the accident Olsen was "actually engaged in work upon the surface of the highway."

Appellant in his appeal has also questioned the constitutionality of the guest statute. We have previously declared the guest statute in this state to be constitutional. See *Botsch v. Reisdorff*, 193 Neb. 165, 226 N.W.2d 121 (1975). We have recently reached the same conclusion in *Kreifels v. Wurtele*, 206 Neb. 491, 293 N.W.2d 407 (1980). We do not believe it is necessary to consider the issue again. We point out, however, that the guest statute in effect at the time of this collision was re-

pealed by the Nebraska Legislature on March 11, 1981, and a new guest statute was enacted at that time, limiting the application of such statute to parents, grandparents, children, grandchildren, and brothers and sisters.

In view of our conclusion that the trial court erred in sustaining the motions of the defendants to dismiss plaintiff's petition against them, and also our conclusion that the matter must be remanded to the District Court for a new trial as to all defendants except the City of Omaha, we do not at this time discuss the remaining assignments of error.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.

BOSLAUGH, J., dissenting in part.

Although it is not clear from the record whether the motor grader was stopped at the time of the collision, the undisputed evidence is that it was traveling at only 3 miles per hour as the McGuire automobile approached it.

Under these circumstances, the fact that the motor grader was traveling in the wrong direction was not a substantial factor in causing the collision and was not a proximate cause of the accident. As this court stated in *Most v. Cedar County*, 126 Neb. 54, 57, 252 N.W. 465, 466 (1934), the motor grader "occupied the same space in the road" whether it was going toward the west or the east.

I would affirm the judgment as to the defendant Sorensen Sand and Gravel Company.

CLINTON and HASTINGS, JJ., join in this dissent.