Neil **MONAHAN and Delores Monahan, Administrators of the Estate of Catherine Monahan, Deceased; and Neil Monahan and Delores Monahan, parents of Catherine Monahan, Deceased, Appellants,**

v.

**Hilda FLANNERY, Appellee.**

**No. 83–2576.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1984.

Decided Feb. 27, 1985.

Robert Kohorst, Harlan, Iowa, for appellants.

C.J. Gatz, Norfolk, Neb., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

**680**

JOHN R. GIBSON, Circuit Judge.

Catherine Monahan, a road construction worker, was struck and killed by a car driven by Hilda Flannery. Ms. Monahan's parents brought a wrongful death action and now appeal from a judgment entered on a jury verdict in favor of Mrs. Flannery. They argue that the district court instructed the jury improperly, both as to Monahan's duty under the statutory rules of the road and as to Flannery's duty to sound her horn upon approaching Monahan. We reverse and remand for a new trial.

Catherine Monahan, age 18, had recently begun working for the Monarch Construction Company. At about 7:30 p.m. on July 28, 1980, she was riding on the tailgate of a Monarch pickup truck, finishing her workday by "flipping" forty-five mile-per-hour speed signs back to regular speed limits. Marlene Buthmann, the driver of the truck, testified that she had pulled the truck completely off the highway by a set of signs and had completely stopped it when Monahan came to the driver's window to ask for a hard hat to stand on while flipping the sign on the other side of the road. Buthmann, who did not hear Flannery's car coming and did not hear the honk of a horn, testified that Monahan was standing beside the pickup with one foot on the dirt of the shoulder and one on the pavement and was taking the hat from her when she was struck by the car.

Mrs. Flannery, who was taking five children to a swimming party, testified that when she saw the pickup parked off the road, she let up on the accelerator and moved closer to the center of the road. She further testified that as she approached the pickup, Monahan stepped away from the pickup and took three steps into the path of her vehicle before she could honk her horn or apply her brakes. Monahan was struck by the right front of Flannery's car and died instantly as a result of her injuries.

The Monahans brought suit, alleging that Flannery's negligence caused the wrongful death of their daughter. In its instructions to the jury the district court outlined the allegations of Flannery's negligence and instructed as to certain duties allocated to her. It gave a specific instruction concerning highway workers, concluding it by stating that highway workers must at all times exercise ordinary care for their safety.[1] The district court then gave detailed instructions as to contributory negligence.[2]

The defendant alleges that Catherine Monahan was contributorily negligent in the following particulars: One, failing to maintain a proper lookout. Two, failing to yield the right of way to the defendant. Three, proceeding into the path of the defendant's vehicle.

Now, in connection with the assertion of the defendant's contributory negligence, if any, the—or with the decedent's contributory negligence, if any, the burden is upon the defendant to prove by a preponderance of the evidence each of the following propositions: One, that Catherine Monahan was negligent in one or more of the particulars alleged by the defendant. Two, that such negligence, if any, was a proximate cause of Ms. Monahan's death.

Now, if the defendant has failed to establish either of these propositions by a preponderance of the evidence, and the plaintiffs have otherwise established by a preponderance of the evidence each of the elements of their claim against the defendant, then your verdict will be for the plaintiffs.

1. This portion of the instruction was as follows:
Because of the nature of his or her work, the highway worker cannot be expected to maintain a constant lookout for vehicles. Therefore, a motorist who knows or reasonably should know that workers are performing their duties on or near the highway owes a duty to remain alert and to proceed with all the care that the circumstances require. Now, although the law recognizes the special status of a highway worker as heretofore described, it also requires that the highway worker must at all times exercise ordinary care for his or her own safety.

2. This instruction was as follows:
By the defense of contributory negligence, the defendant in effect alleges that, even though the defendant may have been guilty of some negligent act or omission which was one of the legal or proximate causes, the plaintiffs' decedent, herself, by her own failure to use reasonable care under the circumstances for her own safety, at the time and place in question, also contributed one of the legal or proximate causes of any injuries and damages plaintiffs may have suffered.

At the conclusion of the instructions, the Monahans objected generally to the court's failure to give requested instructions and specifically to the ordinary care and contributory negligence instructions, on the ground that they obviated the special protection given highway workers under Nebraska law. The Monahans appeal, urging error in the instructions on the grounds they objected to at trial, as well as other error.

### I.

We deal first with the Monahans' argument that the district court's instructions were in conflict with Neb.Rev.Stat. § 39–606 (1978), which provides:

Unless specifically made applicable, the provisions of sections 39–601 to 39–6,122, except those provisions relative to careless driving and to reckless driving, shall not apply to:

(1) Persons * * * while actually engaged in work upon the surface of a highway but shall apply to such persons * * * when traveling to or from such work.

The Monahans argue that this statute relieves highway workers of such statutory requirements otherwise imposed on pedestrians as the duty to yield the right-of-way to vehicles on the roadway when crossing other than at crosswalks,[3] the restrictions placed on walking along or upon roadways,[4] the prohibition against suddenly leaving the curb or other place of safety and walking or running into the path of a vehicle,[5] and the duty to keep a proper lookout. The Monahans contend that while the court in its instructions did refer to the special status of the highway worker, nonetheless it elsewhere essentially instructed the jury to disregard that status, first, by stating that a highway worker must at all times exercise ordinary care for his safety, and, second, by stating that the jury could find Monahan contributorily negligent if

she failed to keep a proper lookout, failed to yield the right-of-way to Flannery, or proceeded into the path of Flannery's vehicle.[6]

We have enunciated a number of principles that guide us in reviewing jury instructions in a diversity case. A district judge has broad discretion in the choice of the form and language of his instructions; "as long as the entire charge fairly and adequately contains the law applicable to the case, the judgment will not be disturbed on appeal." *Board of Water Works Trustees v. Alvord, Burdick & Howson,* 706 F.2d 820, 823 (8th Cir.1983), *quoted in Lackawanna Leather Co. v. Martin & Stewart, Ltd.,* 730 F.2d 1197, 1201 (8th Cir.1984). Where the law governing the case is expressed in a statute, the court in its charge should use statutory language; but the standard remains whether the instructions as a whole substantially apprise the jury of the meaning of the statute and fairly and fully present the issues to the jury. *La Barge Water Well Supply Co. v. United States,* 325 F.2d 798, 803 (8th Cir. 1963). In reviewing instructions to determine if they correctly set forth the applicable law, we must read and consider the charge as a whole. *Bern v. Evans,* 349 F.2d 282, 290 (8th Cir.1965).

As we apply these principles to the case before us, we first observe that section 39–606 plainly and unequivocally excepts persons "engaged in work upon the surface of a highway" from the particular provisions of the several statutes that comprise the rules of the road. Despite this statutory exception, the district court proceeded to instruct that Monahan could be found negligent if she did not yield the right-of-way or if she crossed in front of the path of the vehicle involved in the accident. These prohibitions are contained in the statutory rules of the road,[7] which are expressly made inapplicable to persons

---

**3.** Neb.Rev.Stat. § 39–643 (1978).

**4.** *Id.* § 39–646.

**5.** *Id.* § 39–642.

**6.** *See supra* notes 1 and 2.

**7.** *See supra* notes 3 and 5.

working on a highway. The instructions taken in their entirety are thus contrary to the provisions of section 39–606. The Monahans were entitled to have an instruction that the right-of-way and crossing duties did not apply to highway workers. Instead, the instructions specifically placed these duties on Ms. Monahan.

The third basis for Monahan's contributory negligence upon which the jury was instructed was failure to keep a lookout. The duty of a pedestrian to keep a lookout does not appear in the statutory rules of the road. The section of the model jury instructions to which the Monahans refer us, N.J.I. 7.03, deals only with the duty of the driver of a motor vehicle to keep a proper lookout. Nebraska case law, however, has held that "a pedestrian who crosses a street between intersections is required to keep a *constant* lookout for his or her own safety in all directions of anticipated danger." *Gerhardt v. McChesney*, 210 Neb. 351, 314 N.W.2d 258, 262 (1982); *see Hrabik v. Gottsch*, 198 Neb. 86, 251 N.W.2d 672 (1977); *Merritt v. Reed*, 186 Neb. 561, 185 N.W.2d 261 (1971). As an accident in this situation would fall under the statutory rules of the road, the requirement to keep a lookout may well be a judicial gloss on these statutory rules, and, hence, also excepted by section 39–606. We need not reach this question, however, since the district court told the jury it could find Monahan contributorily negligent on one or more of the three bases. Thus, the instruction as given would authorize a finding in favor of Flannery if it were found that Monahan had violated one of the two statutory prohibitions specifically inapplicable to highway workers.

■ Flannery's attempts to avoid the impact of section 39–606 need not detain us long. Flannery first argues that the statute must be construed narrowly and, thus, that Monahan's work of "flipping" signs was not work on the *surface* of the road. Under Flannery's interpretation of the statute, only persons actually in physical contact with the surface of a road while working (for example, persons holding shovels

or jackhammers actually in contact with the surface or those operating heavy machinery actually in contact) would be protected. "Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 71, 102 S.Ct. 1534, 1538, 71 L.Ed.2d 748 (1982). To construe the statute as Flannery suggests would produce just such an unreasonable result. Monahan's job of flipping signs as the workday ended was an integral part of and a duty essential to the work on the highway. We have no difficulty in concluding that as a matter of law Monahan was actually engaged in work upon the surface of the highway at the time she was struck by the Flannery vehicle.

■ Flannery next argues, citing *Beebe v. Sorensen Sand & Gravel Co.*, 209 Neb. 559, 308 N.W.2d 829 (1981), that since the statute excludes persons "traveling to or from * * * work" Monahan is not protected since she "was travelling between positions where her task would be performed." *Beebe* dealt with an accident in which an operator was moving a snowplow against traffic to a street several blocks away he had missed plowing. The Supreme Court of Nebraska held that under those particular circumstances whether the operator was actually engaged in work on the surface of a highway was a question of fact. The facts of *Beebe* are so dissimilar to those of the present case that *Beebe* affords Flannery no support. In *Beebe* the operator arguably had completed a job of plowing a street and was moving some distance on a motorized vehicle to begin another job of plowing. Flannery would have us extend the gross movement present in *Beebe* to the action of walking across a roadway to flip a sign. Under Flannery's interpretation of the statute, its protection would incessantly flicker in and out of existence as highway workers moved about the construction or repair site in performance of their normal tasks. "[I]nterpretations of a statute which would produce absurd results are to be avoided if

alternative interpretations consistant with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S.Ct. 3245, 3252, 73 L.Ed.2d 973 (1982). At the time of the accident, Monahan had gone to the construction company truck to get a hard hat to stand on while flipping the signs and was either preparing to cross or crossing the highway when she was struck. Again, we have no difficulty in concluding that Monahan at this time was actually working on the highway so as to fall within the purview of the statute.

■ Flannery finally argues that even if Monahan does fall under the protection of the statute, all that the statute does is render the statutory rules of the road inapplicable to her conduct. Consequently, argues Flannery, Monahan's conduct must then be judged by the applicable common law, which would impose on her a duty of reasonable or ordinary care. In support of her argument, Flannery cites several Nebraska cases, all dealing with accidents on private property. *See Kresha v. Kresha,* 216 Neb. 377, 344 N.W.2d 906 (1984); *Ybarra v. Wassenmiller*, 206 Neb. 164, 291 N.W.2d 725 (1980); *Bassinger v. Agnew,* 206 Neb. 1, 290 N.W.2d 793 (1980). Section 39–603 of Nebraska's statutory rules of the road provides that those statutes "refer exclusively to operation of vehicles upon highways." Thus, the rules do not apply to accidents on private property—the entire occurrence or situation is excluded. In contrast, under section 39–606 an *accident* involving a person working on a highway is clearly covered by the statutory rules of the road. The exclusion applies only to the *individual* working. Thus, the intent of

the statute is not to look to the common law to ascertain the liability involved but rather is to relieve the person working from specific statutory duties that otherwise would be imposed on him elsewhere in the statutory rules of the road. We need not reach the question of the degree of care owed by such a worker to conclude that instructions which are contrary to such statutory relief from specific duties must be in error.

We conclude that the district court erred in instructing on the claims of specific allegations of contributory negligence that are rendered inapplicable by section 39–606. The error is prejudicial and requires reversal.

II.

■ The Monahans also argue that the court erred in failing to instruct on Flannery's duty to sound her horn under section 39–644.[8] The Monahans' objection to the failure to give the instructions was most general.[9] Under Rule 51 of the Federal Rules of Civil procedure,[10] the Monahans' lack of specificity normally would require us to find the presence of plain error before reversing on this ground alone. However, the Monahans did *request* the instruction. Further, our review of the record reveals that the district court marked the proffered instruction as "given." Thus, it may be that the district court simply failed by inadvertence to read the instruction to the jury. In this particular situation, we believe the Monahans' earlier request sufficiently preserved the alleged error for review. *See Stewart v. Ford Motor Co.*, 553 F.2d 130, 140–41 (D.C.Cir.

---

**8.** Neb.Rev.Stat. § 39–644 (1978) provides:

Notwithstanding the other provisions of sections 39–601 to 39–6,122, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give an audible signal when necessary and shall exercise proper precaution upon observing any child or obviously confused or incapacitated person upon a roadway.

**9.** The Monahans' counsel merely stated: "The other ones [objections] I had were also things

that were failed to give from the requested instructions."

**10.** Rule 51 provides, in part:

No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury.

1977) (given Rule 46 of Fed.R.Civ.P., not necessary to object to instruction if position previously clearly made to court); *Mumma v. Reading Co.*, 247 F.Supp. 252, 259 (E.D. Pa.1965) (objection not necessary since request of instruction satisfied "substantive spirit" of Rule 51).

■ In instructing the jury, the district court first stated that the Monahans had alleged that Flannery was negligent in the following ways:

One, failing to maintain a proper lookout.

Two, failing to exercise greater than normal care in a road construction area when she knew or reasonably should have known that workers such as decedent, Catherine Monahan, were engaged in work on or near the surface of the highway.

Three, failing to warn the decedent by honking her horn.

Four, failing to pass in the opposite lane and give a wide birth to an overtaken vehicle having road workers on it.

Five, failing to stop within the assured clear distance ahead.

Six, failing to have her vehicle under control.

The district court next stated that the Monahans' recovery would depend on their proving "by a preponderance of the evidence * * * that the defendant was negligent in one or more of the particulars claimed against her." The district court then dealt with several of those particulars, instructing the jury as to the duty incumbent upon Flannery.[11] However, the district court did *not* instruct more particularly on Flannery's duty to warn Monahan by honking her horn.

Once again, we are bound by the necessity of reading and evaluating the instructions as a whole. Since the district court

did instruct as to the duties of proper lookout and reasonable speed but not as to the duty to sound one's horn, it is quite possible that the jury could have believed that that latter duty was, in fact, not a specific duty required by law, but, instead, merely an allegation of negligence by the Monahans (which was the way it was initially characterized). An error as to a specific instruction "is not cured by general statements which set out the respective contentions." *Northern Pacific Railway v. Herman*, 478 F.2d 1167, 1171 (9th Cir.1973). We must conclude that there was error in failing to give the instruction that fully outlined Flannery's duty to sound her horn and that the error is sufficiently prejudicial to require reversal.

### III.

■ The Monahans also claim the district court erred in instructing the jury by using the Nebraska, instead of the Iowa, measure of damages in wrongful death actions, by submitting an incorrect, misleading formula for calculation of those damages, and by failing to instruct on the doctrines of last clear chance, reasonable control, and range of vision. We need not reach these issues. The arguments asserted on appeal can be considered by the district court on retrial.

We reverse and remand for a new trial in accordance with this opinion.

---

**11.** For example, as to the "proper lookout" particular, the court stated:

The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right of way or is driving on the side of the highway where such driver

has a lawful right to be. Such driver must keep a lookout ahead or in the direction of travel and is bound to notice of the roadway or bound to take notice of the roadway, to observe conditions along the way, and to know what is in front of him or her for a reasonable distance.